[No. 20591. *En Banc.* July 28, 1927.]

*In the Matter of the Assessment of* METROPOLITAN BUILDING COMPANY.

TAX COMMISSION *et al., Appellants,* v. METROPOLITAN BUILDING COMPANY, *Respondent.*[1]

[1] TAXATION (123)—WRONGFUL ASSESSMENT—REMEDIES OF OWNER —APPEAL. An appeal lies to the supreme court from the judgment of the superior court on an appeal from the tax commission, under Rem. 1927 Sup., § 11087-7, providing for an appeal from any order of the tax commission to the superior court, and the general appeal statute, Rem. Comp. Stat., § 1716, providing for an appeal from a judgment of the superior court.

[2] TAXATION (99)—ASSESSMENT—APPEAL—NOTICE. An appeal from the state tax commission need not be served upon an interested city, in view of Rem. 1927 Sup., § 11087-7, providing for an informal and summary appeal served only on some member of the tax commission or its secretary within twenty days and to be filed with the clerk of the court.

[3] CONSTITUTIONAL LAW (39)—TAXATION (99)—JUDICIAL POWERS— ENCROACHMENT ON LEGISLATURE—ASSESSMENT—APPEALS. Rem. 1927 Sup., § 11087-7, providing for an appeal from orders of the state tax commission on equalizing or fixing assessments for taxation, is not unconstitutional in that it delegates legislative functions to the court.

[1]Reported in 258 Pac. 473.

[4] Taxation (99)—Assessment—Appeal—Trial De Novo. Upon an appeal under Rem. 1927 Sup., § 11087-7, from an order of the state tax commission, fixing valuations for the purpose of assessment, there is a trial *de novo* in the superior court to the extent only of determining whether the action of the commission was so arbitrary or capricious as to amount to actual or constructive fraud, with power to change the valuations only in case such fraud is found.

[5] Taxation (60)—Assessment—Leaseholds. In assessing the value of a leasehold, the worth of the lease from year to year, and considering the term, fixes the criterion; and in case of the tenant's improvements, with bonded indebtedness, profits must be figured after some plan of amortization for return of the money invested, whether reimbursing stockholders or bondholders for the money advanced or loaned.

[6] Taxation (60, 210)—Assessment—Leasehold—Excessive Valuation—Evidence. The state tax commission's assessment of a leasehold of a city business block at a valuation of $2,750,000 is arbitrary and excessive and upon a fundamentally wrong basis, where it appears that the net average profit for the previous five years, when capitalized, shows a value of but $600,-000 to $800,000, and that the commission disregarded all evidence of the results of actual experience, and adopted an arbitrary rule of expense, based on floor space; and therefrom and from the gross annual receipts, found a theoretical net annual profit, which it capitalized at a valuation of $3,467,806.73.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered February 21, 1927, in favor of the defendant, reducing an assessed valuation on a leasehold, after a hearing on the merits before the court. Affirmed.

*The Attorney General* and *R. G. Sharpe, Assistant,* for appellant Tax Commission.

*Thomas J. L. Kennedy* and *Arthur Schramm,* for appellant city of Seattle.

*Donworth, Todd & Holman, Donald G. Graham,* and *Frank C. Owings,* for respondent.

Tolman, J.—The state tax commission fixed the assessed value for taxation purposes for the year 1926 of the leasehold interest on the Metropolitan tract, or, as

it is commonly known, the "old University grounds," in the city of Seattle, held and owned by the Metropolitan Building Company, at $1,375,000. The building company appealed from the order of the tax commission to the superior court for Thurston county, and subsequently the city of Seattle likewise appealed. After a hearing in the superior court on both appeals, that court found that the action of the tax commission was so capricious and arbitrary as to amount to constructive fraud, set aside the order of the commission and restored the value fixed by the county assessor of $700,000, from which the city had originally appealed to the tax commission.

The state tax commission and the city have appealed from the judgment of the superior court, and likewise, as a matter of safety, have made application here for a writ of review to review the judgment of the superior court. Both the appeal and the application for the writ have been submitted to us on the same record, and all parties unite in asking us to determine which course is the proper practice.

[1] Without entering into a prolonged discussion, we may say briefly that we see no reason why an appeal will not lie, and, if so and if the remedy by appeal be adequate, a writ of review will not issue.

The statute on this subject (ch. 18, Laws of 1925, p. 33), provides, in § 7 [Rem. 1927 Sup., § 11087-7], for an appeal from any order of the tax commission to the superior court, but is silent as to any appeal from the judgment of the superior court. The general appeal statute (§ 1716, Rem. Comp. Stat.) [P. C. § 7290], provides for an appeal from a final judgment of the superior court to this court, and we think the case of *State ex rel. Great Northern R. Co. v. Railroad Commission*, 60 Wash. 218, 110 Pac. 1075, is a sufficient and complete answer to any reason which might be ad-

vanced here against the right of appeal. We there-
fore hold that the appeal was properly taken, and the
writ of review will be denied and the application
therefor dismissed.

[2] The city, in the superior court, moved to dis-
miss the building company's appeal from the order of
the tax commission because the notice of appeal had
not been served upon the city and because, it is claimed,
the court had no jurisdiction.

The denial of this motion is assigned as error. The
statute (§ 7, ch. 18, Laws of 1925, p. 38) [Rem. 1927
Sup., § 11087-7] provides for an informal and sum-
mary appeal and directs only that the notice of ap-
peal shall be served on some member of the tax com-
mission or its secretary within twenty days from the
entry of the order appealed from, and be filed with
the clerk of the superior court to which the appeal is
taken. The statute was fully complied with, and cer-
tainly, where no harm or prejudice has resulted, we
are not justified in fixing conditions which the statute
does not in terms require.

[3] As to the second ground of the motion to dis-
miss, it seems to be contended that the assessment and
levy of taxes are legislative functions which may not be
delegated to the courts without contravening the con-
stitution. However, the courts of this state have
always been open to those who have sought to show
that a taxing power has been exercised capriciously,
arbitrarily or on a fundamentally wrong basis, and so
we conclude that the court had jurisdiction to the ex-
tent we have just indicated. We do not enlarge, be-
cause the matter will be further discussed under the
next assignment of error.

[4] It is next urged that the superior court erred
in trying the case *de novo*. When the matter came on
for hearing, the proceeding being a new one, the ques-

tion arose as to whether the jurisdiction of the court was limited to a review of the record as certified to the court, or whether evidence might be received and a trial be had *de novo*. Both court and counsel realized that the statute was silent on the question of procedure, that the course to be followed was largely an uncharted one, that the case might set a precedent to be followed in the future, and that it was important that a correct procedure be determined and followed. In his first ruling on the question, the court did direct that a trial *de novo* be had, but that is a somewhat elastic term, and as the trial proceeded and evidence was received, the rulings of the court consistently and properly limited that term in language so apt and so clear that we can do no better than to quote and adopt that ruling as our own. The court said:

"I think we must consider this case as it is being waged here, as an appeal from the ruling of the tax commission, an appeal by the Metropolitan Building Company from the ruling of the tax commission, increasing the valuation of the company's property; and the case must be viewed from that standpoint. I think counsel for the company rather has taken a broader view of the court's meaning on the order granting a trial *de novo*. The court could not go beyond the limitations that the supreme court of this state has made, and in granting a trial *de novo* this court, of necessity, could only mean the trying of the case anew so far as the introduction of testimony is concerned and the determination of facts is concerned, for the purpose of enabling this court to determine whether the valuation placed upon this property by the tax commission was erroneous to the extent that it was actually or constructively fraudulent. If the court should thus find, I think the court would have power to fix valuation; but if the court should find the findings of the commission were correct from the testimony taken by the court, that would be the extent of the court's power in the matter.

"Now, this rule as to the limitations of the court in

this state is well established and is to about this effect, that the courts will interfere in behalf of a taxpayer and prevent the imposition of an excessive tax when it is shown to be the result of capricious or arbitrary action amounting to an actual or constructive fraud upon the rights of the taxpayer. The courts have not the power to fix the valuation of property as against that fixed by the taxing officers, in the absence of such a showing. This principle is clearly set forth in the case of *Templeton v. Pierce County*, 25 Wash. 377, and is sustained by many other authorities in this state and elsewhere.

"In the case of *First National Bank v. Council*, 112 N. W., an Iowa case, it was held that, upon an appeal from the determination of a board of equalization under a statute providing that the court shall hear and determine anew, questions arising before the board, it was held the court was not clothed with jurisdiction to sit as an assessing tribunal, and that the court has authority only to deal with the correctness of the conclusions reached by the board. So when this court announced this was a trial *de novo* it could only hold that the court would hear evidence anew for the purpose of determining under all the facts and circumstances touching the valuation, whether or not the State Tax Commission had fixed valuations which would amount to actual or constructive fraud upon the taxpayer."

Since this has always been the rule in this state, when the taxpayer has brought suit in equity for relief from unjust assessment and taxation, we are convinced that the legislature, in providing for an appeal from an order of the tax commission, since it fixed no practice in the act, intended that the well established equity practice should be followed; especially so, since that practice affords the proper ground for relief in the simplest and most direct way.

Other errors are assigned upon the admission and rejection of evidence and matters incident thereto, but since we shall disregard all improper evidence in

reaching a conclusion on the merits, we will not treat of these matters, except as they may be incidentally referred to hereafter.

[5]   We now come to the merits.   The subject matter of this case has been before us three times in the past. *Metropolitan Bldg. Co. v. King County*, 62 Wash. 409, 113 Pac. 1114, *Id.*, 64 Wash. 615, 117 Pac. 495, and *Id.*, 72 Wash. 47, 129 Pac. 883.   The general history of the leasehold involved is sufficiently shown in these earlier cases and need not be here repeated. At the time of each assessment heretofore involved, the operations showed a net loss; now they show a profit, but of how much is seriously in dispute and presents the vital question in the present case.

The first of the former cases settled the law, which is still applicable.   It is there said:

"We are bound by the statute, therefore, to determine the value of the leasehold as personal property. In determining the worth of a leasehold the courts have universally held that it is the value of the term less the rent reserved.   The value of the term is fixed with reference to present as well as prospective conditions; not speculative, but actual; or, to state the proposition more aptly, its value in money to one who desires to sell but who is under no necessity for selling, and to one who is desirous of buying but is under no compulsion to do so. . . .

"This rule of value has been applied in condemnation cases, where it is necessary to determine the immediate value of leasehold property as a basis for the assessment of damages. *Corrigan v. Chicago*, 144 Ill. 537, 33 N. E. 746, 21 L. R. A. 212; *In re New York & Brooklyn Bridge*, 4 N. Y. Supp. 222; *Pennsylvania R. Co. v. Eby*, 107 Pa. St. 166.   If the real property upon which the buildings are erected were owned by a private individual, we apprehend that the question raised in this case would not have occurred; for, unless controlled by the contract of the parties, the real property would be assessed to the owner of the fee, while the leasehold would be assessed to the lessee.   The fact

that the fee is in the people of the state of Washington does not alter the rule.

"The fallacy of appellants' position may be readily shown by suggesting that, in the final years of the term, if their theory be followed, respondent would pay only a nominal tax, or be burdened by a tax so onerous as to amount to confiscation. For if the assessment be made with reference to the time the lease had yet to run, the assessed value would be out of all proportion to its value. If, on the other hand, respondent were compelled to pay upon the amount of its investment, the tax would be grossly excessive. Whereas, under the rule as we find it to be, the present worth of the lease from year to year, considering also the term, fixes a criterion of value easily ascertainable and just to both parties. Therefore, an assessment based upon the value of the improvements or the amount invested therein was erroneous, and entitles respondent to relief."

The later cases strictly followed this rule of law, but some, perhaps, unfortunate expressions referring to the bonded indebtedness seem to have led the appellant city to believe that the trial court was misled thereby, and it advances an argument to the effect that respondent is claiming, and by the judgment appealed from actually received, a deduction of its bonded indebtedness from the net value of the leasehold. We see no such ruling in the prior cases, and find that respondent does not now claim, and did not receive, such a credit.

It makes no difference whether respondent improves its property with its own capital or borrows the money for that purpose, securing the loan by a mortgage or trust deed on the leasehold. The leasehold must be improved to make it productive and profitable, and presumably the better it is improved, the more profitable it will prove to be. The improvements become the property of the state as and when made, and the leaseholder, before any profit can be figured, must pro-

vide by some plan of amortization for the return of the money invested in the improvements, together with reasonable interest thereon during the time it is so invested. This is all it claims or was credited with, and it can make no difference whether the money so returned goes into the pockets of the stockholders to reimburse them for their advances, or to the bondholders to pay back the money loaned.

[6] There is in the record a mass of testimony presented for the purpose of establishing the value, and almost as many different theories are advanced as there were experts examined in the case. It is manifestly impossible to present, analyze and discuss each theory, and for the sake of clarity and brevity we must content ourselves with a somewhat general statement of what we think may properly be found from the competent evidence in the case.

In the trial before the superior court, respondent proceeded upon the theory of showing its actual receipts and its reserves and disbursements, properly deductible, to the end that its net profit in operating under the lease should be ascertainable, and that net profit, properly capitalized, would show the value of the leasehold under the rule laid down in the previous decisions of this court. Disregarding the evidence to which objections were interposed, there is ample evidence in the case, properly received, to indicate that operations have resulted in a gross income for the year pending at the time of this levy of $1,174,909.23, and an average gross income for the five years preceding the levy of $1,041,564.68. There is like evidence also to show that, after deducting operating expenses, general expenses, proper amortization and reserves, the net income or profit for the year ending January 31, 1926, was $67,402.20, and the average profit for the five years preceding the levy was $73,958.45. This average

profit, being the larger sum, when capitalized shows a value of $600,000 plus to $800,000 plus, according to the factor used, or an assessable value of $300,000 to $400,000 (the assessment being fifty per cent of the actual value) as against the $700,000 fixed by the county assessor in the first instance.

Evidence to this same effect was before the tax commission, but apparently that body disregarded all such evidence of the results of actual experience, and, by taking the total floor space at the building company's schedule of rents asked, determined that the gross annual receipts should be $1,598,756.51 less a deduction for theoretical vacancies of ten per cent, adopted an arbitrary rule of expenses, etc., based on floor space, and thus found a theoretical net annual profit of $346,-825.76, which it capitalized at a valuation of $3,467,-806.73; hence its valuation of $2,750,000 and assessed value of fifty per cent of that sum.

The difference between actual income as shown by respondent and the theoretical income as claimed by appellants more than covers the difference in the profits as contended for by each side. So we need not discuss the matter of expenses and reserves.

No doubt, one who owns a property capable by judicious management of being made profitable, and therefore valuable, may not complain if his property is assessed at a value that it would have attained if properly managed, and if he be unwise, slothful or indifferent in the conduct of his affairs, he may not urge his own remissness in such a case as this. But there is no question of that kind here. It is conceded, or at least not denied, that the building company's management has been very efficient, and it is reputed to be one of the best managers of such a property in the state.

There seems no doubt, from the evidence adduced,

that Seattle has been somewhat overbuilt as to office buildings (the class here chiefly involved), and there is ample showing that respondent's vacancies, instead of running within a theoretical ten per cent, have been as high as twenty three per cent. Nor is respondent to be blamed for building somewhat in advance of the demand. It had a large tract to which it was eager to draw tenants. If it improved only up to one hundred per cent of the then demand, others more venturesome would probably forestall it, and, when a building was completed, it might be only to find that those who had been prospective tenants when the building was begun had been drawn to other sections to occupy buildings completed in the interim, and thus the development of the tract would be delayed, and perhaps the character of business once possible to have been obtained would be forever lost to another and different locality. Having in mind the necessity of establishing business on such a tract in a new and growing city, we are inclined to the view that respondent acted wisely in building somewhat in advance of actual demand.

The judgment, good faith and efficiency of respondent being unquestioned, it seems to us that to disregard the results of its actual operations in favor of a theory, based largely upon opinion evidence, was to act capriciously and arbitrarily as the law applies those terms.

The appellant city proceeded upon a still different theory. Its evidence, in the main, was directed to establishing, by opinion evidence, the value of the land owned by the state and covered by the lease, to the establishment of a theoretical custom of leasing on a basis of six per cent of the value of the land, the tenant to pay taxes assessed against the land, and from the amount of such a rental, plus taxes which would have been assessed against a private owner, the rental ac-

tually paid by the respondent was deducted and the balance capitalized for the unexpired term of the lease, thus showing a theoretical value running up to $8,-000,000 plus.

We cannot conceive of one desiring to purchase closing his eyes to the actual experience of an efficient operator and buying on such a theory. Moreover, the theory advanced by the city is, as we understand it, condemned by our previous holdings in the cases already cited. The evidence excluded, of which the city complains, if admitted would not have changed this situation.

Were we called upon to fix the assessable value, it would be necessary to discuss in greater detail the reserves and deductions used by respondent in arriving at the amount of its annual profits; but since there was no appeal by the building company from the assessment of $700,000, which means an actual value of $1,-400,000, and since, if the actual profits were doubled, the value would not exceed that sum, we see no present need for going further.

We are convinced that the judgment of the trial court was right, and it is therefore affirmed.

HOLCOMB, FULLERTON, PARKER, MAIN, MITCHELL, FRENCH, and ASKREN, JJ., concur.