MOSES LAKE HOMES, INC., Appellant,

v.

GRANT COUNTY, Appellee and Cross-Appellant,

Larsonaire Homes, Inc., Larson Heights, Inc., and Moses Lake Homes, Inc., Cross-Appellees.

No. 16234.

United States Court of Appeals Ninth Circuit.

Jan. 25, 1960.

Rehearing Denied March 17, 1960.

Lycette, Diamond & Sylvester, Lyle L. Iverson, Seattle, Wash., for appellant and cross-appellees.

Paul A. Klasen, Jr., Pros. Atty., Grant County, Ephrata, Wash., Felix & Abel, Jennings P. Felix, Spec. Coun., Seattle, Wash., for appellee and cross-appellant, Grant County.

Abbott M. Sellers, Acting Asst. Atty. Gen., Grant Wiprud, Lee A. Jackson, Myron C. Baum, Mark S. Charwat, Attys., Dept. of Justice, Washington, D. C., Dale M. Green, U. S. Atty., Spokane, Wash., for the United States.

Before BARNES, HAMLEY, and JERTBERG, Circuit Judges.

HAMLEY, Circuit Judge.

This proceeding is collateral to a federal condemnation action now pending in the district court. It involves the claim of Grant County, Washington, to a substantial part of the sums deposited in court by the government as estimated compensation. The claim, resisted by the three condemnees, is for unpaid personal property taxes assertedly levied against the leaseholds which are being condemned.

■ The federal district court entered a judgment granting the county's claim in part. Moses Lake Homes, Inc., one of the condemnees for whom the sums were deposited, has appealed. Grant County has cross-appealed against all three condemnees.[1]

The questions here presented are whether the tax liens on which the county relies are valid under state law and if so what part, if any, of the taxes thereby secured may be collected in view of the restrictions imposed by section 511 of the Housing Act of 1956.[2]

The condemnees, in addition to Moses Lake, are Larsonaire Homes, Inc., and Larson Heights, Inc. All three were sponsors of Wherry Act housing projects on Larson Air Force Base in Grant County, Washington. As sponsors they entered into separate leases with the United States pursuant to sections 801 to 809 of Title VIII of the National Housing Act, 12 U.S.C.A. §§ 1748, 1748a to h. The Moses Lake lease was entered into on May 31, 1950, the Larsonaire lease on August 6, 1953, and the Larson Heights lease on August 2, 1954.

---

1. The judgment did not terminate the condemnation action since the issues to be determined in fixing final compensation were not adjudicated. The court, however, made the express determination and direction provided for in Rule 54(b), Federal Rules of Civil Procedure, 28 U.S.C.A. This court therefore has jurisdiction to entertain the appeal and cross-appeal.

2. Enacted August 7, 1956, 70 Stat. 1110, 42 U.S.C.A. § 1594 note.

By the terms of each lease the respective lessees were to erect, maintain, and operate on the military reservation a housing project for a period of seventy-five years unless sooner terminated by the government. The projects were financed by F.H.A. insured loans. The housing units were to be leased to military and civilian personnel assigned by the military commander.

Under the terms of these leases the buildings and improvements, as completed, became real estate and property of the United States. Upon expiration of the leases or their earlier termination all such improvements were to remain the property of the government without further compensation. Since the completion of the buildings and improvements and until March 1, 1958, the respective sponsors operated the rental housing projects in the manner contemplated by the leases.

In June 1954 the assessor of Grant County listed the physical improvements placed upon the land by Moses Lake Homes, Inc., on his "Detail and Assessment List," for 1955 taxes. Moses Lake brought an action in the Superior Court of the State of Washington for Grant County to enjoin the levy of any taxes on its housing units for the year 1955 or thereafter. An injunction as prayed for was entered, and Grant County and the State of Washington appealed to the state supreme court. In a decision rendered on June 28, 1956, the supreme court reversed and remanded the case for a new trial because the trial court had not permitted the State of Washington to intervene. Moses Lake Homes, Inc. v. Grant County, 49 Wash.2d 182, 299 P.2d 840.

Following the second trial, a judgment enjoining Grant County from levying any taxes on the housing units of Moses Lake for the year 1955 or thereafter was again entered. Grant County and the State of Washington once more appealed. In its second decision, the Washington Supreme Court held that in view of Offutt Housing Co. v. County of Sarpy, 351 U.S. 253, 76 S.Ct. 814, 100 L.Ed. 1151, a tax on the leasehold could be measured by the value of the buildings. The judgment enjoining the levying of such taxes for 1955 and subsequent years was accordingly reversed. Moses Lake Homes, Inc. v. Grant County, 51 Wash.2d 285, 317 P.2d 1069, decided November 14, 1957. The injunction was dissolved in December 1957.

Thereafter and before the end of 1957, Grant County levied on the Moses Lake property for 1955 taxes pursuant to the assessment previously made. Before the end of 1957 the county also listed and levied upon the Wherry Act property of Moses Lake for the years 1956, 1957, and 1958. At the same time it listed and levied upon the Wherry Act property of Larsonaire for the years 1956, 1957, and 1958, and upon the like property of Larson Heights for the years 1957 and 1958.[3] The listing was done on detail lists of personal property as omitted property for those years, pursuant to Revised Code of Washington 84.40.080.

On January 21, 1958, the county treasurer issued distraint and tax sale notices describing the improvements on the Wherry Act housing projects operated by

---

3. The taxes thus levied for the indicated years are as follows:

| Year | Moses Lake | Larsonaire | Larson Heights |
|------|-----------|------------|----------------|
| 1955 | $21,150 | | |
| 1956 | 32,925 | $21,750 | |
| 1957 | 31,330 | 18,798 | $18,798 |
| 1958 | 22,575 | 14,145 | 14,145 |

In addition, Grant County later sought to levy taxes against each of the sponsors for 1959 in the following sums: Moses Lake, $22,575; Larsonaire, $14,145; and Larson Heights, $14,145.

the three companies in question.[4] On March 1, 1958, the United States instituted a condemnation suit in the United States District Court for the Eastern District of Washington, seeking to acquire the described leasehold interests of Moses Lake, Larsonaire, and Larson Heights. At the same time a declaration of taking was filed, in connection with which the government deposited $253,000 in the registry of the court as estimated compensation.[5]

On March 12, 1958, the government applied for and obtained an order temporarily restraining Grant County from proceeding with the tax sale referred to above. This restraining order was superseded on March 28, 1958, by a preliminary injunction to the same effect.

Petitions on behalf of the condemnees were filed with the district court on March 26, 1958, requesting orders directing payment to them of the respective amounts deposited in the registry of the court. On April 8, 1958, Grant County petitioned the district court for an order directing payment to it of most of the $253,000 which had been deposited by the government.[6]

The hearing on these counterclaims led to entry on July 3, 1958, of the judgment here under review.[7] As before noted, the tax claims were denied except as to Moses Lake for the years 1955 and 1956. The petitions of the condemnees were granted in full except for a deduction in the case of Moses Lake sufficient to pay 1955 taxes in the sum of $21,150, and 1956 taxes in the sum of $32,925, together with interest.

Appeal of Moses Lake Homes, Inc.

We first consider the appeal of Moses Lake from that part of the judgment which allowed the tax claims against it for the years 1955 and 1956. Appellant contends that for either one of two reasons the court erred in allowing the county's claim for those years. The first such reason, according to appellant, is that no tax was validly levied for 1955 or 1956 upon the Moses Lake property taken in the condemnation proceeding.

The condemnation action is one to condemn leasehold interests, together with associated easements and contract rights. The government is not condemning physical improvements on the military reser-

4. The tax years dealt with in these distraint and tax sale notices are as follows: Moses Lake, 1955, 1956, and 1957; Larsonaire, 1956 and 1957; and Larson Heights, 1957.

5. The deposited sum was allocated between the leasehold interests of the three condemnees as follows: Moses Lake, $126,500; Larsonaire, $65,300; Larson Heights, $61,200.

6. With regard to Moses Lake, the county's claim was based on asserted unpaid taxes in the total amount of $130,555 for the years 1955 through 1959, together with interest in the sum of $11,730.73 to March 1, 1958, for the years 1955 through 1957. The total amount so claimed against Moses Lake was $142,285.73, which is in excess of the amount deposited for that condemnee by the United States. See footnote 5.

With regard to Larsonaire, the county's claim was based on asserted unpaid taxes in the total amount of $68,838 for the years 1956 through 1959. The total amount so claimed against Larsonaire was thus in excess of the amount claimed by

Larsonaire ($65,300) deposited for that condemnee. See footnote 5. With regard to Larson Heights, the county's claim was based on asserted unpaid taxes in the total amount of $47,088 for the years 1957 through 1959. The total amount so claimed against Larson Heights was thus $14,112 less than the $61,200 which had been deposited for that condemnee. See footnote 5.

The aggregate of the unpaid taxes and interest which was made the basis of the county's claim against the funds deposited for the three condemnees was $258,211.73. However, by reason of the distribution of the deposited funds as between the condemnees, the county's total recovery, if it had prevailed completely, would have been $238,888. The only portion of the deposit which would not have gone to the county would have been the $14,112 balance to the credit of Larson Heights.

7. Preparatory to the hearing on these motions, requests for admissions and responses thereto, together with certain exhibits, were filed. Additional exhibits were received at the hearing.

vation. Under the terms of the lease it already owns those improvements. It follows that if Grant County has an enforceable claim against the deposited sums for 1955 and 1956 taxes it must be based on a valid levy against the leasehold interest of Moses Lake for those years and a tax lien arising therefrom.

Appellant argues that Grant County did not undertake to levy taxes against the leasehold interest of Moses Lake for 1955 or 1956 taxes. Instead, it is asserted, the county made an attempt to levy a tax for those years upon the physical improvements which Moses Lake constructed on the leasehold. This attempt was abortive, it is contended, because the improvements became the property of the government as soon as they were completed, and so Moses Lake had no interest therein which could be taxed.[8]

In support of this argument appellant points to RCW 84.40.020, which provides that all personal property subject to taxation shall be listed and assessed every year.[9] It is provided in RCW 84.40.050 that the tax commission shall prescribe suitable forms of detail and assessment lists or schedules to be used by assessors for the listing, assessment, and equalization of property for tax purposes.

In listing and assessing the property here in question for 1955 and 1956 taxes, the county assessor apparently used the forms prescribed by the tax commission pursuant to RCW 84.40.050. However, he made no entry on these forms under item 28 entitled "Leaseholds." Instead, the listing was made under item 27 entitled "Improvements upon land the fee of which is vested in the United States,

the state, or any political subdivision thereof." [10] At no stage in the subsequent taxing procedure with respect to these years was any reference made to leasehold interests. As before noted, the distraint proceedings later instituted were purportedly directed against the physical improvements and not the leasehold interest of Moses Lake.

Grant County argues that the doctrine of res judicata precludes Moses Lake from attacking the validity of the 1955 and 1956 levies on the ground referred to above, or on any other ground. The county points out that in the prior state court proceedings referred to above Moses Lake unsuccessfully attacked the validity of these levies.

In the first appeal in the state court action challenging these levies, Moses Lake contended that the county was attempting to levy and collect an ad valorem tax on the buildings, whereas only the leasehold was subject to tax. This is precisely the same contention which Moses Lake advances in the instant suit. In the state court action, however, the contention referred to was not grounded on the point here made, that incorrect entries were made on the detail and assessment lists. The latter point is nevertheless one which Moses Lake could have made in the state court action.

In the second appeal in the state court action the attack upon the validity of the levies was construed by the state supreme court as being based on a somewhat different contention. This was the contention that the levies were invalid because the county sought to measure a tax on a leasehold by the value of the buildings. But, again, Moses Lake did

---

8. Unnecessary to support this contention is Moses Lake's further contention that under the common law of Washington buildings permanently erected on real property are real property. With respect to improvements upon lands owned by the United States, RCW 84.04.080 provides a different rule. See footnote 9, infra.

9. As defined in RCW 84.04.080, personal property includes "all leases of real property and leasehold interests therein for a term less than the life of the holder; [and] all improvements upon lands the fee of which is still vested in the United States * * *."

10. In the case of Moses Lake the assessment noted under item 27 in the Detail List of Personal Property was $500,000, with this notation on the reverse side: "This listing covers 400 rental units at Larson Air Force Base near Moses Lake, Wash."

not argue, though it could have, that the levies were invalid because improper entries were made on the detail and assessment lists.

■ A judgment upon the merits in a state court action is res judicata in a subsequent federal court action where the parties and subject matter are the same. This is true not only with regard to matters actually presented to sustain or defeat the right asserted, but also as respects any other available matter which might have been presented to that end. Grubb v. Public Utilities Commission of Ohio, 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972.

■ It is therefore our view that the judgment of the Washington Supreme Court upholding the validity of the levies "for the year 1955 and thereafter" [11] is res judicata on the question here raised as to the validity of those levies. Regardless of the manner in which entries were made on the detail and assessment list, we therefore hold that the levies against Moses Lake for 1955 and 1956 taxes were validly directed against the company's leasehold interest.

This being the nature of the levies, the validity thereof is not open to challenge on the ground that the value of the leasehold was measured by the value of the improvements. Offutt Housing Co. v. County of Sarpy, supra; Moses Lake Homes, Inc. v. Grant County, 51 Wash.2d 285, 317 P.2d 1069.

The alternative reason advanced by Moses Lake why the court erred in allowing the county's claim against the funds deposited for Moses Lake, based on unpaid taxes for 1955 and 1956, is that the collection of the taxes for those years is forbidden, under the circumstances of this case, by section 511 of the Housing Act of 1956.

Section 511 amends section 408 of the Housing Amendments of 1955, 69 Stat. 653, to provide that no state or local taxes on Wherry Housing project lessees from the United States, "not paid or encumbering such property or interest prior to June 15, 1956," shall exceed the amount of taxes or assessments on other similar property of similar value, less specified offsets as determined by the Secretary of Defense or his designee.[12]

The trial court held that the restrictions on taxation imposed by section 511 do not apply with regard to the 1955 and 1956 taxes levied against the leasehold of Moses Lake. This ruling was based on the view that the liens for those taxes are to be regarded as encumbering the leasehold prior to June 15, 1956.

In reaching this conclusion the court expressed the opinion that taxes do not become a lien until levied, and noted that the taxes for 1955 and 1956 were not levied until December 1957. But, the

---

11. Moses Lake Homes, Inc. v. Grant County, 51 Wash.2d 285, 317 P.2d 1069, 1070.

12. Section 511 reads in its material portion as follows:
"Sec. 511. Section 408 of the Housing Amendments of 1955 is amended by adding at the end thereof the following: 'Nothing contained in the provisions of title VIII of the National Housing Act in effect prior to August 11, 1955, or any related provision of law, shall be construed to exempt from State or local taxes or assessments the interest of a lessee from the Federal Government in or with respect to any property covered by a mortgage insured under such provisions of title VIII: *Provided*, That, no such taxes or assessments (not paid or encumbering such property or interest prior to June 15, 1956) on the interest of such lessee shall exceed the amount of taxes or assessments on other similar property of similar value, less such amount as the Secretary of Defense or his designee determines to be equal to (1) any payments made by the Federal Government to the local taxing or other public agencies involved with respect to such property, plus (2) such amount as may be appropriate for any expenditures made by the Federal Government or the lessee for the provision or maintenance of streets, sidewalks, curbs, gutters, sewers, lighting, snow removal or any other services or facilities which are customarily provided by the State, county, city, or other local taxing authority with respect to such other similar property * * *.'"

court stated, the levies for 1955 and 1956 taxes would have been made in October 1954 and 1955, respectively, but for the injunction, later proved to be erroneous, obtained by Moses Lake. Under these special circumstances, it was held, the liens for 1955 and 1956 taxes should be regarded as encumbering the property prior to June 15, 1956.

Appellant argues that it is immaterial what brought about the situation that delayed the perfecting of the liens for 1955 and 1956 taxes until after June 15, 1956. The fact remains and is here controlling, appellant asserts, that the liens for those years did not come into existence so as to encumber the property until after June 15, 1956. It is pure speculation, appellant also contends, whether in the absence of the injunction the levies would have been made prior to that date.

We will first consider the lien for 1955 taxes. In June 1954 the county assessor listed and placed a valuation on the Moses Lake property for purposes of levying the 1955 tax thereon. The property so listed and valued then became subject to RCW 84.60.030, the applicable part of which reads as follows:

> "The taxes assessed upon each item of personal property assessed shall be a lien upon such personal property from and after the date upon which it is listed with and valued by the county assessor, and no sale or transfer of such property shall in any way affect the lien of such taxes thereon."

■■ The lien referred to in RCW 84.60.030, however, is only inchoate at the time of listing and valuation. See State of Washington v. Snohomish County, 71 Wash. 320, 128 P. 667. It is not enforceable until there is a valid tax for that year which the lien may secure. There can be no valid tax until there has been a levy specifying the amount there-

of. Puget Sound Power & Light Co. v. Cowlitz County, 38 Wash.2d 907, 234 P.2d 506, 511. If no 1955 tax had been thereafter levied, or if the property had passed into public ownership prior to such levy, the lien for 1955 taxes would never have matured into an enforceable lien. But in the meantime, and unless defeated by one of these circumstances, it was an encumbrance upon the property which prevented third persons from gaining intervening rights.

The lien for 1955 taxes on the Moses Lake leasehold was not defeated by failure to levy a tax or by passage of the leasehold into public ownership. A tax on this leasehold for 1955 taxes was levied in December 1957, following dissolution of the injunction. When the levy was made the leasehold in question remained private ownership.[13] The levy was therefore valid and upon being made became effective by relation back to the time when the inchoate lien first came into existence.[14]

■ We hold that an inchoate tax lien, in existence prior to June 15, 1956, which thereafter becomes fully effective by relation back from the date of a subsequent valid levy, is a tax encumbrance prior to June 15, 1956, within the meaning of section 511. It follows that the 1955 taxes levied against the leasehold of Moses Lake are not affected by the restrictions imposed by section 511.

■ With regard to the 1956 taxes levied against the leasehold of Moses Lake, the facts are different. By reason of the injunction obtained by Moses Lake in the late summer or early fall of 1954, the leasehold was not listed and valued for 1956 until December 1957. It follows that no inchoate lien came into existence prior to June 15, 1956. In our view, however, the taxes which in the normal course of statutory procedure would have encumbered a taxpayer's

13. The declaration of taking was not filed until March 1, 1958.

14. For other examples of the doctrine of relation back, as applied to tax liens arising under somewhat analogous stat-

utes, see United States v. State of Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L. Ed. 1327; United States v. Sampsell, 9 Cir., 153 F.2d 731; Allen v. Bemis, 99 N.H. 247, 108 A.2d 549.

property or interest prior to June 15, 1956, are to be regarded as having done so, where such is prevented only by procedural obstacles interposed by the taxpayer. Congress could not have intended that taxpayers may, by instituting misconceived injunction proceedings, deny state and local governments the benefit of the June 15, 1956, saving clause included in section 511.

The view just expressed is based upon the assumption that but for the injunction the assessor would have listed and valued the leasehold for 1956 taxes prior to June 15, 1956. It was his statutory duty under RCW 84.40.040 to do this between December 1, 1954, and May 31, 1955. He performed the similar statutory duty in the preceding year, and the attorneys representing Moses Lake apparently thought that he would do so again unless enjoined. In view of these circumstances, we do not regard the assumption we have made as unduly speculative.

For the reasons indicated, it is our opinion that the 1956 taxes levied against the leasehold of Moses Lake, as well as the 1955 taxes, are not affected by the restrictions imposed by section 511.[15]

This disposes of the questions raised on the appeal of Moses Lake, and calls for an affirmance of that part of the judgment which recognizes the county's claim against the funds deposited for Moses Lake based on taxes levied against that company for 1955 and 1956.

### Cross-Appeal of Grant County

We turn now to the cross-appeal of Grant County. The county cross-appeals from that part of the judgment which disallows its tax claims against the deposited funds for the 1957 through 1959 taxes levied against Moses Lake, the 1956 through 1959 taxes levied against Larsonaire, and the 1957 through 1959 taxes levied against Larson Heights.

The trial court disallowed the tax claims against the three condemnees for these years on the ground that the collection of such taxes is subject to the restrictions imposed by section 511 and that in view of those restrictions no such taxes were collectible.

We direct our attention first to the disallowed tax claims made against the funds deposited for Moses Lake.

■ For the reasons stated above, it is our view that the 1957 taxes levied against the leasehold of Moses Lake are not subject to the restrictions imposed by section 511. But for the injunction that leasehold would have been listed and valued for 1957 taxes prior to June 15, 1956. An inchoate lien would then have come into existence which, when the tax was thereafter levied, would have become fully effective, by relation back, to a date prior to June 15, 1956. By its own conduct in securing an injunction, Moses Lake prevented this inchoate lien from coming into existence prior to June 15, 1956. As in the case of the 1956 taxes on this leasehold, we will, under these circumstances, consider that a section 511 encumbrance attached prior to June 15, 1956.

We therefore hold that the trial court erred in disallowing the county's claim for 1957 personal property taxes against the funds deposited for Moses Lake.

■ With regard to the 1958 tax levied against Moses Lake, no inchoate lien could have come into existence prior to December 1, 1956. This was the first day on which the assessor, even if unrestrained by court order, could have listed and valued the leasehold for 1958 taxes. See RCW 84.40.040. Since no inchoate lien for 1958 taxes could have come into existence prior to June 15, 1956, the limitations on tax payments set out in section 511 apply thereto.

Under that section the amount of taxes or assessments on a Wherry Act housing project leasehold not paid or encumbering such property or interest prior to June 15, 1956, may not exceed the amount

---

15. It will be noted that the views expressed above, to the effect that the 1956 taxes levied against Moses Lake are not affected by section 511, apply with like effect to the 1955 taxes levied against that company.

of taxes or assessments on other similar property of similar value less certain offsets.

The trial court held that under Washington law the valuation of leaseholds for tax purposes other than Wherry Act project leaseholds must be measured by the market value of the leasehold considered in the light of its burdens and benefits.[16] The court further held that with respect to Wherry Act leaseholds the valuation must be measured by the full value of the buildings and improvements.[17] The court concluded from this that under Washington law housing projects are levied upon a basis different and higher than the amount of taxes and assessments on other similar property of similar value.

At the oral argument counsel for Grant County contended that in Washington the rule that the value of non-Wherry Act leaseholds is to be measured by market value considered in the light of the burdens and benefits of the leasehold applies only where the improvements are of a kind which will outlast the leasehold. Where the improvements will not outlast the lease, it was argued, the value of the leasehold for tax purposes may be measured by the value of the improvements. Percival v. Thurston County, 14 Wash. 586, 45 P. 159, decided in 1896, was cited as authority for this proposition.

The Percival case is not in point. No lease was involved. Thurston County was seeking to levy an ad valorem tax upon improvements the taxpayer had built upon state-owned tidelands. The Metropolitan Building Company cases and this case, on the other hand, involve the taxation of leasehold interests. The trial court correctly held that the valuation rule applied in the Metropolitan Building Company cases is applicable with regard to all non-Wherry Act leaseholds.

The trial court's further finding that a different method was used in valuing the Wherry Act project leaseholds here in question is also correct. Likewise to be sustained is the court's finding that the method used in assessing the Moses Lake leaseholds resulted in a higher tax than would have been true in the case of a non-Wherry Act leasehold.[18]

■■■ Under section 511, however, the fact that the taxes are higher does not invalidate the entire tax. It only requires that the amount collectible be reduced to what it would have been if the tax had been levied on a non-Wherry Act leasehold basis.

Hence, to give effect to this part of section 511, where it is found that the assessing method used was different and produced a higher tax it is also necessary to find the amount of the excess so that a partial or total offset may be effectuated. No such finding was here made, nor do we find any facts of record which would support such a finding.

On the present state of the record, therefore, the conclusion reached by the trial court that utilization of a different assessment method called for disallowance of the county's 1958 tax claim

16. In support of this view concerning the Washington law, the court cited In re Metropolitan Building Co., 144 Wash. 469, 258 P. 473; Metropolitan Building Co. v. King County, 72 Wash. 47, 129 P. 883; Metropolitan Building Co. v. King County, 62 Wash. 409, 113 P. 1114.

17. See Moses Lake Homes, Inc. v. Grant County, 51 Wash.2d 285, 317 P.2d 1069, in which the value of this same Wherry Act project leasehold was measured by the full value of the buildings and improvements.

18. The Moses Lake leasehold was heavily encumbered by a mortgage. The amortization of this indebtedness was not taken into account in assessing the leasehold, as only the value of the physical improvements was considered. But had the valuation of the leasehold been measured by its market value considered in the light of its burdens and benefits, the necessity of amortizing the mortgage would have been taken into account. See In re Assessment of Metropolitan Building Co., 144 Wash. 469, 258 P. 473, 476. Had it been taken into account, the assessed value for 1958 and therefore the levied tax would have been substantially lower, though we do not know how much lower.

against Moses Lake cannot be sustained.[19]

But the trial court also held that the claim against Moses Lake for 1958 taxes, as well as the claim against Moses Lake, Larsonaire, and Larson Heights for the other years referred to in footnote 19, must be disallowed because of the other offsets which were designated pursuant to section 511.

19. The court also found that for the same reason it was necessary to disallow the county's 1957 tax claim against Moses Lake, its 1956, 1957, and 1958 tax claims against Larsonaire, and its 1957 and 1958 tax claims against Larson Heights. The view has been expressed above that section 511 does not apply to the 1957 tax claim against Moses Lake. The county's tax claims against the other two condemnees are discussed below.

20. The Secretary's designation reads as follows:

"Department of the Air Force
Washington
"Office of the Secretary 4 Sep 1957
Determination
"Subject: Determination under Section 408 of the Housing Amendments of 1955, as amended: Larson Air Force Base, Washington (FHA Projects Nos. 171–80001–7–8)

"1. I have considered the information with respect to the subject project, the lessee of which believes that the tax for 1956 will be equal to approximately $65,000.00. Pursuant to my designation under Section 408 of the Housing Amendments of 1955, 69 Stat. 653, as amended by Section 511 of the Housing Act of 1956, 70 Stat. 1110, I have determined $111,358.65 to be equal to (1) any payments made by the Federal Government to the local taxing or other agencies involved with respect to such property, plus (2) such amount as may be appropriate for expenditures made by the Federal Government or the lessee for the provision or maintenance of streets, roads, sidewalk, curbs, gutters, water and sewer system, fire lines and hydrants, playgrounds, street lighting, fire protection, garbage disposal, snow removal and sewer service, or any other service or facilities which are customarily provided by the State, county, city, or other local taxing authority with respect to other similar property of similar value. This

This ruling was based on a finding that on September 4, 1957, the authorized representative of the Secretary of the Air Force had determined that offsets totaling $111,358.65 must be taken into account.[20] According to this finding, this sum was equal to the payments, as defined in clause (1) under the first proviso of section 511, made by the federal government to local taxing and other agen-

determination is not to be considered an expression of opinion by me or the Department of Defense with respect to the validity or propriety of the tax bills to which it is applied.

"2. The items included in this determination are as follows:

"Payments for operation of schools pertaining to dependents living in Wherry projects pursuant to P.L. 874, 61st Congress: $46,646.57.

"Funds paid under P.L. 615 for years January 1953 to June 1956, inclusive, $94,092.00 depreciated at 4%: $3,763.68.

"Appropriate amounts for expenditures for services and facilities.

"Provisions by Air Force of streets, curbs, and sidewalks not including entrance walks and drives, cost $65,658.56, amortized 25 yrs. life: $2,626.35.

"Provision by lessees of streets and street signs, cost $106,416.91, amortized 25 yrs. life: $4,258.68.

"Provision by Air Force of water and sewer system, cost $132,761.00, amortized 25 yrs. life: $5,310.44.

"Provisions by lessees of curbs and sidewalks, cost $103,726.51, amortized 25 yrs. life: $4,149.06.

"Provision by lessees of water and sewer system, cost $185,426.00, amortized 25 yrs. life: $7,417.04.

"Expenditures by Lessee:

"Street lighting: $1,708.80; Sewer charge: $2,800.00; Sewer line maintenance: $250.00; Street maintenance and repair: $682.02; Street sanding: $100.00; Playground maintenance: $2,100.00.

"Expenditures by Air Force:

"Police Protection: $23,248.00; Access Roads—Maintenance: $6,300.00.

"3. The Chief, Family Housing Division, Directorate of Facilities Support, D.C.S./O., will make copies of this determination available to all interested parties.

"/s/ George S. Robinson
Deputy Special Assistant for Installations"

cies involved with respect to the three leaseholds, plus the expenditures made by the federal government or the lessees for government facilities and services of the kind described in clause (2) under this proviso. The court further found that in making its assessments of taxes against the three lessees Grant County did not give any credit or consideration to this $111,358.65 determination.

The county, however, advances several reasons why in its opinion the Secretary's determinations are "totally useless" and should therefore have been disregarded by the court. The first of these is that the designated offsets were not segregated with regard to the individual taxpayers, but only an unsegregated designation covering all three leaseholds at Larson Air Force Base was made.

It is true that no segregation was made. The question is whether under section 511 such a segregation was required.

Some support for the county's view is to be found in the use in section 511 of such terms as "the interest of a lessee," "the interest of such lessee," "with respect to such property," and "the lessee." It can be argued that the use of the singular number in referring to Wherry Act lessees and Wherry Act project properties evidences an intent to require that the designation of offsetting payments and expenditures under clause (2) of the proviso be allocated as between individual lessees and leaseholds.

However, when regard is had to the underlying purpose of Congress in enacting this statute, we believe that such a construction of section 511 is not warranted. As indicated in the report of the House Committee on Banking and Currency on the bill which became the Housing Act of 1956,[21] this legislation was an outgrowth of the decision of the United States Supreme Court on May 28, 1956, in Offutt Housing Company v. County of Sarpy, 351 U.S. 253, 76 S.Ct.

814, 100 L.Ed. 1151. The committee report points out that this decision upheld the right of local taxing officials to levy personal property taxes against the lessee's interest in a Wherry Act project, measured by the full value of the buildings and improvements.

It is stated in the committee report that a large portion of the projects have not been subjected to such local taxes in the past, and as a consequence the federal government has frequently made payments to local taxing officials in lieu of taxes in exchange for usual services, such as schools, furnished to the projects. Moreover, as the report notes, many expenditures have been made by the federal government for streets, utilities, schools, and for other services normally furnished by taxing bodies. Now that the right of local taxing agencies to tax such leaseholds has been recognized, the committee report states, it had become important "that no payments be made to communities which would constitute a windfall over and above normal taxes."

This purpose of avoiding windfalls to taxing communities could not be achieved unless all payments and expenditures of the kind described in clauses (1) and (2) of the proviso, made in connection with the operation of a particular military installation, were permitted to be set off against the taxes levied against Wherry Act leaseholds located thereon. For example, if with respect to a particular Wherry Act leasehold the aggregate of the clause (1) and (2) payments and expenditures is $10,000, and the tax levied against the leasehold is $5,000, the tax would be set off and a balance of $5,000 would remain. Unless the government could set off this sum against the tax levied for the same year on another Wherry Act leasehold on the same military installation, the local taxing unit would receive a windfall in that amount.

Thus it is that the purpose of the enactment can be realized only if all such

21. House Report No. 2363, 84th Cong., 2d Session, accompanying H.R. 11742, 3 U.S. Code Congressional and Administrative

News, 84th Cong., 2d Session, page 4509, at 4555–4556.

payments and expenditures are aggregated together in the Secretary's designation, without regard to the particular leaseholds situated on the military installation. If, as will undoubtedly occur in some cases, the clause (1) and (2) offsets are less than the taxes levied against all leaseholds on a particular base, an allocation of offsets as between lessees is necessary in order to compute their individual net taxes. But such an allocation is a matter of interest only to the taxing agency and the taxpayers, and so need not be dealt with in the Secretary's designation.

 We accordingly hold that the designation of offsets here in question made pursuant to section 511 is not to be disregarded because it did not allocate the offsetting items as between the three Wherry Act project lessees involved in this case.[22]

The second objection which the county makes to the Secretary's designation of offsets in the amount of $111,358.65 is that it is not limited to payments and expenditures made after June 15, 1956. The date referred to is that which is named in the first sentence of the proviso to section 511.[23] It is the county's contention that section 511 does not contemplate the designation as offsets of clause (1) and (2) payments and expenditures which were made before June 15, 1956.

Examination of the determination in question indicates that the itemized offsets are not expressly limited to payments and expenditures made after June 15, 1956. With regard to one item the contrary is indicated.[24]

 In our view, designations made under the proviso of section 511 may properly include sums representing annual amortization of capital expenditures made prior to June 15, 1956. Such annual amortization sums, realistically considered, represent the amounts which the local government would have had to pay in the years subsequent to June 15, 1956, had the local government made these capital expenditures.

On the other hand, we do not believe that the proviso of section 511 authorizes the inclusion in the Secretary's designation of any part of noncapital expenditures made prior to June 15, 1956. Congress sought to prevent local taxing units from receiving windfalls after June 15, 1956. It would receive a windfall after that date if credit could not be taken for the sums necessary to be paid annually in order to amortize capital expenditures made prior thereto. It would not receive a windfall after that date if credit could not be taken for noncapital expenditures made prior thereto, since local government does not normally

22. While the particular matter now under discussion is the county's tax claim against Moses Lake for 1958, the ruling just stated applies with like effect to the county's 1956, 1957, and 1958 tax claims against Larsonaire, and its 1957 and 1958 tax claims against Larson Heights. See footnote 19.

23. In section 511 the date is used in this context:

"* * * Provided, That, no such taxes or assessments (not paid or encumbering such property or interest prior to June 15, 1956) on the interest of such lessee shall exceed * * *."

24. The second item under paragraph 2 of the determination reads: "Funds paid under P.L. 615 for years January 1953 to June 1956, inclusive, $94,092.00 depreciated at 4%: $3,763.68." The $3,-

763.68 designated under this item thus represents the annual sum necessary to amortize over twenty-five years capital expenditures made between January 1953 and June 1956.

This Public Law citation is incomplete and erroneous. It should be "Public Law 815, 81st Cong., 2d Sess., 64 Stat. 967 [20 U.S.C.A. § 251 et seq.]" This act relates to the construction of school facilities in areas affected by federal activities. It may also be noted that the citation "P.L. 874, 61st Cong." in the immediately preceding item of the designation is likewise erroneous. The reference intended was probably Public Law 874, 81st Cong., 2d Sess., 64 Stat. 1100, 20 U.S.C.A. § 236 et seq., which relates to the providing of financial assistance for local educational agencies in areas affected by federal activities.

amortize such expenditures over a period of years.

It is not possible to determine whether the Secretary's designation is so limited with regard to expenditures made prior to June 15, 1956. It was therefore error to use that determination in its present form as a basis for denying the county's tax claims.

The third objection which the county makes to the Secretary's designation of offsets is that such offsets were not designated with regard to specific tax years, but only for an unidentified and unsegregated number of years.

The parties have apparently assumed that the $111,358.65 designation is intended to include all credits due at the time the determination was made on September 4, 1957. But examination of the designation quoted in footnote 20 indicates that with regard to six items the payments and expenses are attributed to a single year. These are the items referred to in footnote 24 and the five items listed under "Appropriate amounts for expenditures for services and facilities." Each of the latter items describes a capital outlay in a certain amount, but then designates approximately four per cent of such outlay as the offset, with the explanation "amortized 25 yrs. life." It would appear that the designation of these net items was intended to be reapplied during each of the twenty-five years that the indicated capital outlays were being amortized.[25]

It is in any event true, as the county asserts, that the offsets were not designated with regard to specific tax years, but only for an unidentified and unsegregated number of years. If, therefore,

section 511 requires that designated offsets be related to specific tax years, it was error to use the designation as a basis for denying the county's 1958 tax claim against Moses Lake.[26]

The proviso to section 511, it will be noted, first recites that no taxes or assessments (not paid or encumbering such property or interest prior to June 15, 1956) on the interest of such lessee "shall exceed the amount of taxes or assessments on other similar property of similar value * * *." Thus, a year-by-year comparison is required between the taxes or assessments actually levied or made with respect to the Wherry Act leasehold for a particular year and those which were levied or made on other similar property of similar value for the same year.

The proviso then goes on to state in effect that the tax or assessment levied or made for a particular year, as reduced to accord with taxes and assessments on other similar property of similar value shall be further reduced by the designated offsets described in clauses (1) and (2). The implication is clear from this that clause (1) and (2) payments and expenditures which may be offset in arriving at the net collectible tax for a particular year are those which were made in that year. Thus, payments and expenditures made in 1957, including annual amortization sums chargeable to that year, may be offset only against taxes levied in 1957 and payable in 1958.

It is therefore our opinion that since the designation in question did not allocate the clause (1) and (2) payments and expenditures as between tax years, it was error to use such designation as

---

25. In the first sentence of the designation it is stated that "the lessee of which believes that the tax for 1956 will be equal to approximately $65,000.00." It is difficult to account for this statement except upon the hypothesis that the designation was intended as an offset for 1956 taxes only. It is likewise difficult to account for the $65,000 figure which appears in this statement. Larson Heights had no tax for 1956. The 1956 tax for Moses

Lake was $32,925, and for Moses Lake and Larsonaire together, $54,675.

26. It may be noted that the Secretary does not always omit an allocation as to tax years in making these designations. In the designation involved in Air Base Housing, Inc. v. Spokane County, No. 35261, now pending on appeal before the Washington Supreme Court, the designation was $109,025.68 "for 1956" and $113,018.45 "for 1957."

a basis for denying the county's 1958 tax claim against Moses Lake.

The fourth and final objection which the county makes to the Secretary's designation of offsets is that it includes a number of items which are not contemplated by section 511. The items referred to are not contemplated by section 511, the county argues, because they assertedly relate to facilities or services of a kind which are not actually or customarily provided by the State of Washington, Grant County, or other local taxing authorities with respect to other similar property.

The parties argue at great length the question of whether under clause (2) of section 511 the expenditures which may be offset against taxes must be limited in the way contended for by Grant County. We find it unnecessary to decide this question, however, since in our view the expenditures which were designated were for facilities and services of a kind furnished by the State of Washington and Grant County.[27]

The county has set out in its brief parallel lists of facilities and services for which expenditures were designated and which the state and county provide with respect to non-Wherry Act property.[28] Not all of the items concerning which designated clause (2) expenditures were indicated have identical counterparts in the nomenclature of the other list. But each item of designated expense is sufficiently identifiable with one or more items of the list of state and county services so that it may be fairly concluded that the limitation suggested by the county has been adhered to.

▮▮▮ We hold that the designation of clause (2) offsets here in question is not to be disregarded on the ground that it includes items of a kind not contemplated by section 511.

This completes our review of the objections made by Grant County against applying the designated offsets against the county's claim made on the funds deposited for Moses Lake based on taxes payable in 1958. In summary, it would have been proper to partially or totally offset against the county's 1958 tax claim on the funds deposited for Moses Lake designated expenditures made in 1957,

---

27. Since it is not necessary to decide this question, we are not called upon to consider the related contention of Moses Lake that the county may not in this action make a collateral attack upon the designation made by the Secretary. As we view it, the other deficiencies we have found in the designation with regard to inclusion of pre-June 15, 1956, payments and expenditures, and failure to segregate the offsets by tax years, do not manifest a collateral attack upon the designation but are arrived at only in considering the applicability of the designation to these taxpayers for the years in question.

28. These lists are as follows:

The Secretary's determination of services provided by the United States:

1. Schools
2. Streets, curbs, sidewalks
3. Street signs
4. Water system
5. Sewer system
6. Street lighting
7. Playground

State and local taxes provide funds for

1. Airport districts
2. Cemetery districts
3. Cities and towns
 General government
 Accident fund
 Pension funds
 Local Improvement guaranty funds
 Park funds
4. Horticultural matters
5. Hospitals
6. Libraries
7. County roads
8. Rodent control
9. Flood control
10. Tuberculosis control
11. Veterans' relief
12. Ferry districts
13. Fire protection
14. Parks
15. Pest control
16. Port districts
17. Public utilities
18. Schools
19. Sewers
20. Water
21. Diking and drainage
22. Irrigation
23. Weed control

including annual amortization of capital expenditures. But since the designation contained no such year-by-year allocation, it was error to utilize it as a basis for disallowing this claim.

■ The county's claim against the funds deposited for Moses Lake based on taxes assertedly payable in 1959 was also denied, but not because of the Secretary's section 511 designation. It was denied because the leasehold passed into government ownership on March 1, 1958, pursuant to a declaration of taking. This was prior to the actual listing and assessment of the property for 1959 taxes, and hence prior to the time a lien could otherwise have attached to the property.

Since the county's claims are in rem, being directed against deposited funds, they cannot be sustained in the absence of a timely and valid lien. The trial court therefore correctly determined that the tax claim against Moses Lake for 1959 must be disallowed.

It follows from what is said above that the county's claim against the funds deposited for Moses Lake should have been allowed with regard to 1957 taxes as well as the 1955 and 1956 taxes, and was properly denied with regard to 1959 taxes. Concerning the claim based on Moses Lake taxes payable in 1958, the record in its present form does not warrant the disallowance ordered by the court.

■ A cause is not ordinarily remanded for the purpose of giving a party an opportunity to supply a deficiency in his evidence. Here, however, the deficiency results from a misunderstanding, apparently shared by the trial court, as to the meaning of section 511, and from the fact that Moses Lake had to rely on a defective Secretary's designation for which the company was not responsible.

Under these circumstances we believe that a remand is in order to afford a reasonable opportunity to make the showing contemplated by section 511.

We turn our attention now to the tax claims against Larsonaire for 1956, 1957, and 1958, and against Larson Heights for 1957 and 1958.

Concerning the 1956 and 1957 taxes of Larsonaire and the 1957 taxes of Larson Heights, these respective properties could have been, but were not, listed and assessed prior to June 15, 1956. The assessor did not do so because he apparently assumed, not without warrant,[29] that in view of the Moses Lake injunction similar injunctions would have been obtained by Larsonaire and Larson Heights if he had attempted to take such action. Thus, no inchoate lien arose prior to June 15, 1956, with regard to Larsonaire's 1956 and 1957 taxes or Larson Heights' 1957 taxes.

■ But county officials were not actually restrained by these two condemnees prior to June 15, 1956, from performing their statutory duty to list and value the Larsonaire and Larson Heights leaseholds. Larsonaire and Larson Heights, therefore, are not chargeable with the assessor's failure to act prior to that date. It follows that with respect to the tax years now being discussed, no encumbrance having attached prior to June 15, 1956, the limitations upon the collection of taxes prescribed by section 511 must be given full application. There has never been any question but that the 1958 taxes levied against Larsonaire and Larson Heights are subject to section 511.

Everything said above concerning the effect of section 511 and the designation made thereunder upon the 1958 tax claim against Moses Lake applies with equal force to the 1956, 1957, and 1958 tax

---

29. On January 3, 1957, following the decision in Offutt Housing Company v. County of Sarpy, supra, the property of Larsonaire was asesssed as "omitted property" for 1956 and 1957 taxes. At the same time the property of Larson Heights was similarly assessed for 1957 taxes. These two companies then obtained state court orders temporarily enjoining further tax proceedings until the remittitur should be handed down in the Moses Lake case then pending before the state supreme court for the second time.

claims against Larsonaire and the 1957 and 1958 tax claims against Larson Heights. What has been said with regard to the county's claim against the funds deposited for Moses Lake based on taxes assertedly payable in 1959 is also applicable with regard to the county's 1959 tax claims against the funds deposited for Larsonaire and Larson Heights.

But one more contention remains to be discussed. At an early point in this opinion we dealt with the argument of Moses Lake that the personal property tax levies against that company were invalid under state law because the assessor did not list the property as a leasehold. We rejected the argument on the ground that the doctrine of res judicata precluded Moses Lake from raising that issue in this action.

■ This doctrine, however, does not preclude Larsonaire and Larson Heights from raising the same issue, since they were not parties to the state court action in which Moses Lake could have obtained an adjudication of the question. These two condemnees did not appeal from that part of the judgment herein which denied the tax claims asserted against them. They could not have appealed because they are not aggrieved by that judgment. They are nevertheless entitled to assert here in defense of that judgment a ground which would support it, even though it was a ground which the trial court rejected. We will assume that they have done so in view of the fact that they joined in the brief in which Moses Lake advanced this argument.

As stated above in discussing the similar contention of Moses Lake, the assessor in listing and assessing these properties used the form prescribed by the tax commission pursuant to RCW 84.40.050. He did not, however, list the properties under item 28 entitled "Leaseholds," but did so under item 27 entitled "Improvements upon land the fee of which is vested in the United States, the state, or any political subdivision thereof."

RCW 84.40.050 authorizing the tax commission to prescribe such forms was enacted in 1925.[30] Prior to this enactment the forms to be used in listing and assessing property were prescribed by statute. Rem.Comp.Stat. § 11137 (Sess. Laws 1897, p. 143, § 16). Under that statute the assessor was required to list and value personal property under some thirty different classes as its character and situation might vary. While that statute was in effect a case arose in the courts of Washington in which the owner of certain property contended that the personal property tax was invalidly levied because the property fell within three classes specified in the statute, whereas it was listed and valued as if in reality it fell only within one class. Southwark Foundry & Machine Co. v. Barham, 126 Wash. 204, 217 P. 1021, 1023.

Rejecting this contention, the Washington Supreme Court said in that case:

"But we cannot conclude that this renders the assessment void. The statute is largely directory, and a substantial compliance therewith is sufficient to satisfy its directions. It is the policy of the law, so declared in the act itself, that all property subject to taxation shall be listed and assessed, and it is of more importance that this part of the act be complied with than it is that it be listed under the specific designation the legislative form prescribes. Moreover, the appellant was in no manner injured by the error. If in the end it is required to pay a tax upon the property it claims, the tax will be no more nor no less than it would have been required to pay had the listing and valuation been made in the manner in which it contends it should have been made."

■ It seems to us that since the Washington Supreme Court regarded the prior statute which prescribed the form

30. Laws Ex.Sess.1925, chapter 130, § 23.

of such lists as directory only it would so regard the form of lists prescribed by the tax commission under the later enacted RCW 84.40.050. The rationale of the Southwark decision therefore leads us to hold that the listing of the Larsonaire and Larson Heights properties under an item not specifically labeled "leaseholds" did not invalidate the levying of taxes upon their Wherry Act project leaseholds for the years in question.

The county's claim against funds deposited for Larsonaire and Larson Heights based on 1959 taxes was properly denied. Concerning the county's claim against the funds deposited for Larsonaire based on 1956 through 1958 taxes and against the funds deposited for Larson Heights based on 1957 and 1958 taxes, the record in its present form does not warrant the disallowance ordered by the court. For the reasons indicated in discussing the disallowance of the claim against Moses Lake for 1958 taxes, we believe that a remand for further proceedings concerning these claims is appropriate.

The judgment is affirmed in part and reversed in part, as indicated herein. The cause is remanded to the trial court for further proceedings and the entry of a new judgment. In such judgment the claim of Grant County against the estimated compensation deposited for Moses Lake Homes, Inc., based on taxes levied against the leasehold payable in 1955, 1956, and 1957, shall be allowed in full. The claims of Grant County against the estimated compensation deposited for Moses Lake Homes, Inc., Larsonaire Homes, Inc., and Larson Heights, Inc., based on taxes assertedly levied against the respective leaseholds of these companies payable in 1959, shall be disallowed in full.

Further proceedings shall be had in the trial court on the claims of Grant County against estimated compensation deposited for Moses Lake Homes, Inc., based on taxes levied against that company payable in 1958; against estimated compensation deposited for Larsonaire Homes, Inc., based on taxes levied against that company payable in 1956, 1957, and 1958; and against estimated compensation deposited for Larson Heights, Inc., based on taxes levied against that company payable in 1957 and 1958.

In such further proceedings the respective taxpayers shall be given a reasonable opportunity (1) to offer evidence showing the extent to which the tax levied for each such year exceeds the tax payable in that year which Grant County levied, or would have levied, on other similar property of similar value; and (2) to obtain and offer in evidence a revised designation of offsets made pursuant to section 511, in which offsetting payments and expenditures made in each year in which the taxes payable in 1956, 1957, and 1958 were levied, including sums reasonably attributable to annual amortization of capital expenditures, are separately stated. With respect to evidence, if any, submitted under (1) above, Grant County may produce counter evidence. The validity of any revised designation may be challenged on any ground not adjudicated on this appeal, subject to the question of whether such challenge is an impermissible collateral attack upon an administrative determination.

All of such evidence, if any, shall then be taken into account by the trial court in determining whether under section 511 it is necessary to partially or wholly disallow the claims of Grant County to which reference is now being made. In the event no substantial evidence is offered by the named taxpayers with respect to any individual year in which such tax was levied, the full amount of the tax subsequently payable on the basis of such levy shall be allowed.

The parties shall bear their respective costs on this appeal and cross-appeal.