[No. 9492. Department Two. August 19, 1911.]

## METROPOLITAN BUILDING COMPANY, *Appellant*, v. KING COUNTY *et al.*, *Respondents*.[1]

TAXATION—ASSESSMENT—EXCESSIVE VALUATION—LEASEHOLD—EVIDENCE—SUFFICIENCY. An assessed valuation of $225,000 for a leasehold is excessive, and should be reduced to $90,000, where it appears that the lessee's improvements cost nearly one and a half million, to meet which and other expenses, it has outstanding $1,844,000 in bonds, that the improvements revert to the landlord on forfeiture of the lease, and that for two years the property had been operated at an increasing loss of $30,000 and $42,000 per year, and competent witnesses testified that the lease did not have any actual value at present and that its future value was speculative, depending upon the development of the city and neighborhood.

Appeal by plaintiff from a judgment of the superior court for King county, Gilliam, J., entered February 8, 1911, reducing an assessment on a leasehold, upon a review on certiorari of the proceedings of the board of equalization. Reversed.

*Douglas, Lane & Douglas* and *Kerr & McCord*, for appellant.

*John F. Murphy* and *Robert H. Evans*, for respondents.

CROW, J.—This cause in the issues and principles involved is similar to that of *Metropolitan Building Co. v. King County*, 62 Wash. 409, 113 Pac. 1114, between the same parties and upon the same leasehold. In the former action the assessed valuation for 1909 was under consideration, and the judgment of the superior court reducing it from $480,000 to $96,000 was affirmed. For the subsequent year of 1910, the county assessor placed an actual valuation of $1,800,000 on the lease, and as other property was assessed at forty-five per cent of its true value, returned an assessed valuation of $810,000. The building company in due season

[1]Reported in 117 Pac. 495.

protested to the board of equalization, and by written peti-
tion demanded a reduction of the assessment to a valuation
not exceeding forty-five per cent of $200,000. After a hear-
ing, the board dismissed the petition. Thereupon the build-
ing company applied to the superior court of King county
for a writ of certiorari to review the proceedings of the board
and county assessor. The superior court reduced the assessed
valuation to $225,000, the same being forty-five per cent of
an actual valuation of $500,000. The building company,
feeling itself aggrieved in that the assessment is still exces-
sive, has appealed.

The real estate covered by the lease is a tract of university
land belonging to the state of Washington, equivalent in
extent to about forty city lots, is located in an outlying busi-
ness district of the city of Seattle, and as state property is
exempt from taxation. This tract was leased by the univer-
sity regents to one James A. Moore, for a term commencing
February 1, 1907, and ending November 1, 1954. The lease,
with the consent of the regents, was, in December, 1907, as-
signed to appellant, the Metropolitan Building Company.
On February 1, 1907, practically all of the real estate was
unimproved, was without streets, and stood from forty to
fifty feet above adjoining official grades. The lease provides
that the lessee shall pay rent quarterly in advance, at the
following rates: From the date of the lease to November 1,
1912, $15,000 per annum; for the succeeding ten-year pe-
riod, $40,000 per annum; for the next succeeding ten-year
period, $80,000 per annum; for the next succeeding ten-
year period, $100,000 per annum, and for the remaining
twelve years of the term, $140,000 per annum. It further
requires the lessee to pay all assessments for regrading, street,
and other special improvements, to erect certain business
blocks of specified quality and value which shall immediately
become the property of the state, and to perform other con-
ditions which need not be here mentioned. Failure to pay the

rent or to perform any other condition subjects the lease-hold estate to forfeiture.

Appellant has paid large amounts for regrading and other nonproductive improvements, and at a total expenditure of $1,465,212.48, has erected four permanent business blocks, now the property of the state. To meet these and other expenditures, it issued bonds in the total sum of $1,844,000, which are now outstanding. It has been unable to rent all storerooms and offices in the business blocks, and for the past two years has been handling the property at a constantly increasing loss. If present conditions improve, it hopes to realize a profit from the lease; but if they do not improve, its enterprise will result in financial loss. It is asserted by appellant, and not disputed by respondents, that at the time the lease was originally executed, the lessor and lessee anticipated the property, which belongs to the state, would be exempt from taxation. It is now conceded that the lease is subject to taxation as personal property. Rem. & Bal. Code, § 9094.

The only question on this appeal is whether the lease has been properly assessed for the purpose of taxation. In *Metropolitan Building Co. v. King County, supra*, we said:

"The only question is, what is the proper basis for valuation. It is the contention of the appellants that the value of the property should be measured by the investment and the duration of the term; whereas, the respondent contends that the proper basis is the actual value in money of the leasehold interest. Const., art. 8, § 2. It has been heretofore held that a leasehold should be taxed as real property. *Moeller v. Gormley*, 44 Wash. 465, 87 Pac. 507. But the legislature has since provided otherwise. 'For the purposes of assessment and taxation all leases of real property and leasehold interests therein for a term less than the life of the holder, shall be and the same are hereby declared to be personal property.' Laws of 1907, p. 206, § 1 (Rem. & Bal. Code, § 9094). We are bound by the statute, therefore, to determine the value of the leasehold as personal property. In determining the worth of a leasehold the courts have uni-

versally held that it is the value of the term less the rent reserved. The value of the term is fixed with reference to present as well as prospective conditions; not speculative, but actual; or, to state the proposition more aptly, its value in money to one who desires to sell but who is under no necessity for selling, and to one who is desirous of buying but is under no compulsion to do so. . . . The fallacy of appellants' position may be readily shown by suggesting that, in the final years of the term, if their theory be followed, respondent would pay only a nominal tax, or be burdened by a tax so onerous as to amount to confiscation, for if the assessment be made with reference to the time the lease had yet to run, the assessed value would be out of all proportion to its value. If, on the other hand, respondent were compelled to pay upon the amount of its investment, the tax would be grossly excessive. Whereas, under the rule as we find it to be, the present worth of the lease from year to year, considering also the term, fixes a criterion of value easily ascertainable and just to both parties. Therefore, an assessment based upon the value of the improvements or the amount invested therein was erroneous, and entitles respondent to relief."

The evidence introduced before the board of equalization is a part of the record. Three prominent real estate men of many years' experience, whose competency has not been questioned were produced as witnesses on behalf of the appellant, and testified that, on March 1, 1910, the lease did not have any actual value; that its future value is speculative and uncertain, depending on further development of the city, further improvement in the neighborhood, and further advancement in rental value. One West, a prominent and experienced real estate dealer, produced as a witness on behalf of respondents, placed an actual valuation of $800,000 on the lease, which at forty-five per cent would justify an assessed valuation of $360,000. This witness, however, conceded that he was not thoroughly familiar with all the terms and conditions of the lease, and upon cross-examination testified as follows:

"Q. What do you think, Mr. West, the leasehold would be

worth, taking into consideration its terms and conditions; taking into consideration the fact that more than $1,800,000 has been invested; taking into consideration that for more than the last two years it has been operated by the Metropolitan Building Co. at a total loss, the first year of about $30,000 and this year $42,000? A. Well, if the expense account shows that is the actual loss, you could not sell it. Q. If the Metropolitan Building Company put this lease in your hands to sell, you would have to explain to the purchasers the terms and conditions of the lease. You would have to show to the purchasers the extent of the improvements and the cost of operation as long as the buildings had been operated. Now, taking into consideration the terms and conditions of the lease, the fact that during the last two years there has been a great deficit, do you think that this leasehold could be sold in the open market? . . . A. If the expense account shows such a deficit we would not sell it to any one . . . Q. You understand that the cost of the building is represented by bonds: That $1,800,000 of bonds are outstanding against this property and have to be paid before the purchasers of the lease can get a dollar? For what would you be willing to put your money in and buy the lease? Mr. Vanderveer (attorney for respondents): The witness has testified that he would not buy the lease. Mr. Kerr (attorney for appellant): I want Mr. West's judgment. A. I have answered the question, that I would not be willing to at all if the buildings are operated at a loss. Q. Knowing these things as you do, what do you think the leasehold would bring in the open market if it was offered for sale? A. It would not sell under such a statement."

The undisputed evidence shows that the total income of the appellant for the year ending December 1, 1909, was $141,446.53; that the carrying charges upon the property for the same period were $174,580.93, leaving a net deficiency of $30,134.40, not including taxes which, when adjusted, will increase the deficit, and that the appellant has expended for nonproductive improvements, such as grades, street assessments, etc., to March 1, 1910, the sum of $148,000. In view of these facts, the evidence tends to show it to be at least problematical whether the lease had any

actual or salable value on March 1, 1910. While it is true that appellant has paid a considerable sum for the lease, has made valuable improvements, has issued bonds in the sum of $1,844,000, and hopes to realize at some time in the future a profit on its investment, it indisputably appears that at the present time appellant is incurring a heavy loss which is constantly increasing, and that its entire enterprise may and probably will prove a financial failure unless growth of the city, improvement in the immediate locality, and material advancement in rental values cause the lease to appreciate in value. Should such an appreciation occur, an increased assessed valuation may be then legitimately imposed for the purposes of taxation. Appellant has expressed its willingness to submit to an assessed valuation of $90,000. Upon the entire record, which we have carefully considered, we regard this offer as liberal and reasonable, and conclude that any greater valuation under existing conditions would be excessive and arbitrary.

The judgment is reversed, and the cause remanded with instructions to reduce the assessed valuation from $225,000 to $90,000.

DUNBAR, C. J., ELLIS, MORRIS, and CHADWICK, JJ., concur.