[No. 10280. *En Banc.* February 7, 1913.]

METROPOLITAN BUILDING COMPANY, *Respondent*, v. KING COUNTY *et al.*, *Appellants.*[1]

TAXATION—ASSESSMENT — VALUATION OF LEASEHOLD — EXCESSIVE ASSESSMENT. Where a leasehold interest in state lands is subject to a bonded indebtedness against improvements which revert to the state, so that it has no real market value, its valuation for the purposes of taxation must be measured by both its burdens and its benefits; and an assessment based on gross income or benefits alone is excessive.

Appeal from a judgment of the superior court for King county, Dykeman, J. entered January 11, 1912, reducing an assessment on a leasehold, upon review on certiorari of the proceedings of the board of equalization. Affirmed.

*John F. Murphy* and *Robert H. Evans*, for appellants.

*Douglas, Lane & Douglas* and *Kerr & McCord*, for respondent.

Gose, J.—This is an appeal from a judgment of the superior court of King county, modifying an assessment upon a leasehold interest in the old university grounds, in the city of Seattle. The case is not a stranger here. See: *Metropolitan Building Co. v. King County*, 62 Wash. 409, 113 Pac. 1114, Ann. Cas. 1912 C. 943; *Id.*, 64 Wash. 615, 117 Pac. 495. The law of the case was settled upon the first appeal. The second appeal presented substantially the same facts as this appeal. On the first appeal, the judgment reducing the assessment on the leasehold for the year 1909 from $480,000 to $96,000 was affirmed. In the second case, the trial court reduced the 1910 assessment from $810,000 to $225,000. On appeal this court reduced it to $90,000. The assessor valued it at $2,000,000 for the year 1911. This valuation, on the adopted basis of forty-five per cent, gave

[1]Reported in 129 Pac. 883.

it an assessed valuation of $900,000. Despite the protest of the respondent, the board of equalization confirmed the assessment. The case was taken to the superior court by certiorari, where the valuation was reduced to $200,000 and the assessed valuation was placed at $90,000. The county has appealed.

The lease was made for a term commencing February 1, 1907, and ending November 1, 1954. The rent reserved is $15,000 per annum to November 1, 1912; $40,000 per annum for the succeeding ten years; $80,000 per annum for the next succeeding ten years; $100,000 per annum for the next succeeding ten years; and $140,000 per annum for the remainder of the term, all payable quarterly in advance. When the lease was made, the property was many feet above grade and unimproved. Up to March 1, 1911, the respondent had issued and sold its mortgage bonds to the amount of $2,267,000. Of this sum it had expended $2,060,000 in productive improvements and $210,000 in nonproductive improvements, consisting of grading the property and the street paving, sidewalks, water mains, sewer and gas mains, light, heat, power, etc. In giving the figures we have used round numbers. Both the fee and the improvements belong to the state. The gross income from March 1, 1910, to March 1, 1911, was $329,000. The gross expenses, not including taxes, during the same period was $341,000.

The testimony shows that the leasehold, measured by its burdens and benefits, has no real market value, but that relieved of its burdens and measured only by its benefits it is of large value. Counsel for the appellant framed his hypothetical questions so as to ask the witnesses "to assume that there is no indebtedness against it," meaning the leasehold interest. The assumption belies the facts. As we have stated, the state owns both the fee and the improvements subject only to the right of user in the respondent. The leasehold is burdened by a debt exceeding the value placed upon the lease by most of the witnesses. A purchaser of the

lease would necessarily stand in the shoes of the respondent. He would take what it has with all its burdens, no more and no less. We had supposed that the former appeals fixed the standard of estimating the value. In the first appeal, we said that the value of the leasehold interest is its actual value in money on the date of the assessment, and

"The value of the term is fixed with reference to present as well as prospective conditions; not speculative, but actual; or, to state the proposition more aptly, its value in money to one who desires to sell but who is under no necessity of selling, and to one who is desirous of buying but is under no compulsion to do so."

In the second appeal we said:

"While it is true that appellant has paid a considerable sum for the lease, has made valuable improvements, has issued bonds in the sum of $1,844,000, and hopes to realize at some time in the future a profit on its investment, it indisputably appears that at the present time appellant is incurring a heavy loss which is constantly increasing, and that its entire enterprise may and probably will prove a financial failure unless growth of the city, improvement in the immediate locality, and material advancement in rental values cause the lease to appreciate in value. Should such an appreciation occur, an increased assessed valuation may be then legitimately imposed for the purposes of taxation."

The last words quoted were prophetic. The situation has not changed. The law of common honesty applies to the taxing power with the same force it applies to an individual. To approve the equalized value would be virtual spoliation. We say here, as we have said before, that the value of the leasehold interest is to be measured both by its burdens and its benefits. It cannot be otherwise. A purchaser would necessarily take it *cum onere*.

The judgment is affirmed.

CROW, C. J., CHADWICK, MOUNT, PARKER, ELLIS, MORRIS, and MAIN, JJ., concur.