## MOSES LAKE HOMES, INC., ET AL. *v.* GRANT COUNTY.

No. 212.   Argued March 23, 1961.—Decided April 17, 1961.

*Lyle L. Iverson* argued the cause and filed a brief for petitioners.

*Paul A. Klasen, Jr.* argued the cause for respondent. With him on the brief was *Jennings P. Felix.*

*Solicitor General Rankin,* Assistant Attorney General *Rice* and *I. Henry Kutz* filed a brief for the United States, as *amicus curiae,* urging reversal.

Mr. Justice Whittaker delivered the opinion of the Court.

Among their various contentions, petitioners sought our writ of certiorari on the ground that, although finding that the State of Washington had discriminatorily, and therefore unconstitutionally, valued and taxed their federal Wherry Act leaseholds, the Court of Appeals for the Ninth Circuit, nevertheless, sustained and enforced those taxes. 276 F. 2d 836. We granted the writ, limited to that question. 364 U. S. 814. Understanding of our decision will require a brief statement of the relevant facts of the case.

Acting pursuant to the provisions of §§ 801 to 809 of Title VIII of the National Housing Act (12 U. S. C. (1958 ed.) §§ 1748, 1748a to 1748h–1), the Secretary of the Air Force, on behalf of the United States, entered into a separate lease, with each of Moses Lake Homes, Inc., Larsonaire Homes, Inc., and Larson Heights, Inc., Washington corporations, demising, in each instance, a particularly described tract of land, within the Larson Air Force Base in Grant County, Washington, for a term of 75 years, unless sooner terminated by the Government, for use as a housing project at a nominal rental of $100 per year.[1]

The leases were on the same form, and each bound the lessee to erect on its leasehold a described housing project, and to maintain and operate it throughout the life of the

---

[1] The Moses Lake lease was entered into on May 31, 1950, the Larsonaire lease on August 6, 1953, and the Larson Heights lease on August 2, 1954.

lease. Each lease contemplated and provided that the lessee would raise the money necessary to construct the project by an F. H. A. insured mortgage loan on its leasehold and the improvements, to be serviced and amortized by the lessee out of its rents from the housing units, which were to be rented at such rates and to such military and civilian personnel as the Commanding Officer of the air base might designate. The leases further provided that the buildings and improvements, "as completed," would become the property of the United States and so remain, regardless of any termination of the lease, without further compensation to the lessee.

With the proceeds of F. H. A. insured mortgage loans on their respective leaseholds and the improvements, aggregating more than $6,000,000, the lessees erected the respective housing projects and undertook their management and operation as agreed in the leases.

In June 1954, the Grant County assessor placed the Moses Lake leasehold on his assessment list for taxation in the year 1955, but he did not then levy any tax against it. Moses Lake promptly sued for and obtained a decree in the Superior Court of the State enjoining the County from levying *any taxes* on its leasehold for the year 1955 and thereafter. Upon the County's appeal, the Supreme Court of Washington reversed on November 14, 1957, holding that the leasehold was taxable by the County, and further holding, upon its understanding of our opinion in *Offutt Housing Co.* v. *Sarpy County*, 351 U. S. 253, that it would be proper, for such purpose, to value the leasehold at "the full value of the buildings and improvements" thereon. *Moses Lake Homes, Inc.,* v. *Grant County,* 51 Wash. 2d 285, 287, 317 P. 2d 1069, 1070.

Thereafter, in December 1957, the County valued these Wherry Act leaseholds on the basis of the full value of the buildings and improvements, and, acting under § 84.40.080, Revised Code of Washington, retrospectively

assessed its taxes against the Moses Lake leasehold for the years 1955 through 1958, against the Larsonaire leasehold for the years 1956 through 1958, and against the Larson Heights leasehold for the years 1957 and 1958 as "omitted property" as authorized by that section.[2] Later, the County assessed and levied its taxes against the leaseholds, on the same basis, for the year 1959.[3]

On January 21, 1958, the County issued its distraints, and also its notices of sales of these leaseholds and the improvements thereon to be held on March 4, 1958, to satisfy its tax demands. Very soon thereafter, the United States instituted this condemnation action in the United States District Court for the Eastern District of Washington against the lessees and Grant County, and on March 1, 1958, it filed therein its declaration of taking, and took, these leasehold estates—depositing in the registry of the court $253,000 as their estimated value[4]—and thereupon, on motion of the United States, the court

---

[2] Section 84.40.080 of the Revised Code of Washington provides, in relevant part, as follows:

"The assessor . . . shall enter in the detail and assessment list of the current year any property shown to have been omitted from the assessment list of any preceding year, at the valuation of that year, or if not then valued, at such valuation as the assessor shall determine from the preceding year . . . . When such an omitted assessment is made, the taxes levied thereon may be paid within one year of the due date of the taxes for the year in which the assessment is made without penalty or interest."

[3] The County's tax claims against petitioners' leaseholds were as follows: Moses Lake, $142,285.73; Larsonaire, $68,838; and Larson Heights, $47,088.

[4] The deposited sum of $253,000 was allocated among the three petitioners as follows: Moses Lake, $126,500; Larsonaire, $65,300; and Larson Heights, $61,200. Thus, the County's claims against the Moses Lake and Larsonaire leaseholders were greater than the amount deposited by the United States as their reasonable value. See note 3. Had the County been successful on all items of its claim, it would have received all but $14,112 of the deposited sum.

enjoined Grant County from proceeding with its tax sales pending final determination of the case.

By its answer, the County claimed, and asked the court to award it, the greater part of the deposit to satisfy its tax demands.[5] The lessees disputed the County's claim, contending, *inter alia,* that the asserted taxes were invalid because discriminatorily assessed in violation of § 511 of the Housing Act of 1956 (70 Stat. 1091, c. 1029, 42 U. S. C. (1958 ed.) § 1594, note) and in violation of the United States Constitution. That issue, among others, was litigated between those parties as adversary codefendants.

Although the District Court found that Washington's "taxes and assessments on Wherry housing [leaseholds] are . . . levied upon a basis different and higher than [other leaseholds]," it, nevertheless, held that, but for the state court injunction, the 1955 and 1956 taxes against the Moses Lake leasehold would have been validly assessed and levied before the effective period of § 511 of the Housing Act of 1956 (June 15, 1956),[6] and it allowed those items of the County's claim; but it denied all other items of the claim. On appeal, the Ninth Circuit "sustained [the District] court's finding that the

---

[5] See note 4.

[6] Section 408 of the Housing Amendments of 1955, as amended by § 511 of the Housing Act of 1956 (70 Stat. 1091, c. 1029, 42 U. S. C. (1958 ed.) § 1594, note), contains the following relevant provision:

". . . Nothing contained in the provisions of title VIII of the National Housing Act in effect prior to August 11, 1955, or any related provision of law, shall be construed to exempt from State or local taxes or assessments the interest of a lessee from the Federal Government in or with respect to any property covered by a mortgage insured under such provisions of title VIII: *Provided,* That, no such taxes or assessments (not paid or encumbering such property or interest prior to June 15, 1956) on the interest of such lessee shall exceed the amount of taxes or assessments on other similar property of similar value . . . ."

method used in assessing the Moses Lake leaseholds resulted in a higher tax than would have been true in the case of a non-Wherry Act leasehold," 276 F. 2d, at 847, but it held that "the fact that the taxes are higher does not invalidate the entire tax. It only requires that the amount collectible be reduced to what it would have been if the tax had been levied on a non-Wherry Act leasehold basis," 276 F. 2d, at 847, and—otherwise upholding the County's levies against the Moses Lake leasehold for the years 1955, 1956 and 1957—it remanded the case to the District Court to make the proper reduction in the amount of those taxes, and also for further proceedings respecting the other taxpayers and tax years involved, except it held that the 1959 taxes were invalid because levied on the leaseholds after the United States had acquired them.

In addition to the weight properly to be accorded to the conclusions of the two courts below that Washington imposes a higher tax on Wherry Act leaseholds than on other similar leaseholds, it is eminently clear that this is so. Section 84.40.030 of the Revised Code of Washington provides that all property shall be assessed at 50 percent of its fair value, and that "Taxable leasehold estates shall be valued at such price as they would bring at a fair, voluntary sale for cash." Consonant with that statute, the Washington Supreme Court has consistently held, save as to Wherry Act leaseholds, that all leaseholds, including leaseholds on the State's own tax-exempt lands, are to be valued for tax purposes on the basis of their fair market value, considering their burdens as well as their benefits. *Metropolitan Building Co.* v. *King County,* 72 Wash. 47, 129 P. 883; *Metropolitan Building Co.* v. *King County,* 64 Wash. 615, 117 P. 495; *Metropolitan Building Co.* v. *King County,* 62 Wash. 409, 113 P. 1114. And see *Bellingham Community Hotel Co.* v. *Whatcom County,* 190 Wash. 609, 612–613, 70 P. 2d 301, 303, and

*Dexter Horton Bldg. Co.* v. *King County,* 10 Wash. 2d 186, 116 P. 2d 507.

Even the facts of the *Metropolitan* cases are remarkably similar to the facts here. There the Metropolitan Company acquired a 50-year lease of land owned by the State. As required by the lease, the lessee erected very substantial improvements upon the land—funding their cost with a large issue of mortgage bonds—which improvements, immediately upon completion, became the property of the State. In the first of those cases, 62 Wash. 409, 113 P. 1114, the Court held that the leasehold should not be assessed at a "speculative" value, but at its "actual . . . value in money . . . ," and that it was error to assess it at the value of the improvements. In the two later *Metropolitan* cases (64 Wash. 615, 117 P. 495; 72 Wash. 47, 129 P. 883), the court emphasized that, in determining the fair market value of the leasehold, consideration must be given to its burdens, including mortgages upon it, as well as to its benefits.

Yet, without overruling or departing those cases with respect to state-created leaseholds, the Washington Supreme Court held in *Moses Lake Homes, Inc.,* v. *Grant County,* 51 Wash. 2d 285, 317 P. 2d 1069, that Wherry Act leaseholds are taxable at "the full value of the buildings and improvements" thereon. It felt bound, as it said, to apply that special valuation rule to Wherry Act leaseholds because of our opinion in *Offutt Housing Co.* v. *Sarpy County,* 351 U. S. 253. In this, the Washington Supreme Court mistakenly read and misapplied the *Offutt* case. Nothing in that case requires the States to assess Wherry Act leaseholds on the basis of the value of the improvements thereon. In this respect, it holds only that such a valuation is not unconstitutional *per se.* That case did not involve any issue or question of discrimination. It involved the law of Nebraska which requires *all leaseholds* in tax-exempt property to be assessed at the

full value of the buildings and improvements thereon, and the *Offutt* case held that such might constitutionally be done. It did not hold, as the Supreme Court of Washington has construed it in the *Moses Lake* case, that a State might constitutionally discriminate against leaseholds on federally owned lands in favor of leaseholds on state-owned lands.

If anything is settled in the law, it is that a State may not discriminate against the Federal Government or its lessees. See, *e. g., Phillips Co. v. Dumas School District,* 361 U. S. 376; *United States v. City of Detroit,* 355 U. S. 466, 473; *City of Detroit v. Murray Corp.,* 355 U. S. 489. In *United States v. City of Detroit, supra,* we said:

> "It still remains true, as it has from the beginning, that a tax may be invalid even though it does not fall directly on the United States if it operates so as to discriminate against the Government or those with whom it deals." 355 U. S., at 473.

The *Dumas* case, *supra,* is closely in point and controlling. There the State of Texas taxed the leasehold estate of a government lessee at the "full value of the leased premises" (361 U. S., at 378), while it imposed "a distinctly lesser burden on similarly situated lessees of exempt property owned by the State and its political subdivisions." 361 U. S., at 379. We there said, "[I]t does not seem too much to require that the State treat those who deal with the Government as well as it treats those with whom it deals itself," 361 U. S., at 385, and we held the tax to be void because it "discriminates unconstitutionally against the United States and its lessees." 361 U. S., at 379. That case is indistinguishable from this one on the point here.

The Court of Appeals was also in error in holding that "the fact that the taxes are higher does not invalidate the entire tax [but] only requires that the amount collectible

be reduced to what it would have been if the tax had been levied on a non-Wherry Act leasehold basis" (276 F. 2d, at 847), and in remanding the case to the District Court to make the necessary adjustment. We held in the *Dumas* case, *supra,* that a discriminatory tax is void and "may not be exacted." 361 U. S., at 387. The effect of the Court's remand was to direct the District Court to decree a valid tax for the invalid one which the State had attempted to exact. The District Court has no power so to decree. Federal courts may not assess or levy taxes. Only the appropriate taxing officials of Grant County may assess and levy taxes on these leaseholds, and the federal courts may determine, within their jurisdiction, only whether the tax levied by those officials is or is not a valid one. When, as here, the tax is invalid, it "may not be exacted." *Phillips Co.* v. *Dumas School District,* 361 U. S., at 387.

Nor is there any merit in respondent's contention that the opinion and judgment of the Supreme Court of Washington in the *Moses Lake* case, *supra,* is *res judicata* of the County's tax claims against the Moses Lake leasehold for at least the years 1955 and 1956. This is so because no tax whatever had then been assessed and levied against the Moses Lake leasehold, and hence no issue of discrimination was or could have been presented and adjudicated in that case.

Inasmuch as the taxes, presently assessed and levied, discriminate unconstitutionally against the United States and its lessees, they are void, and hence may not be exacted.

*Reversed.*