UNITED STATES of America, Phillips Petroleum Company, the Anaconda Company, Homestake-New Mexico Partners, Homestake-Sapin Partners, Kermac Nuclear Fuels Corp., and Kerr-Mc-Gee Oil Industries, Inc., Plaintiffs,

v.

BUREAU OF REVENUE OF the STATE OF NEW MEXICO, Charles C. Brunacini, Commissioner of Revenue, and Carlos Trujillo, Jr., Director, School Tax Division, Defendants.

Nos. 4488–4493.

United States District Court
D. New Mexico.

June 7, 1963.

Louis F. Oberdorfer, Asst. Atty. Gen., Frederick B. Ugast and William Massar, Attorneys, Department of Justice, Ruth Streeter, Asst. U. S. Atty., Holger Albrethsen, Jr., Chief Counsel, Grand Junction Office, United States Atomic Energy Commission, Robert A. McKay and John F. McNett, Office of the Chief Counsel, Albuquerque Operations Office, United States Atomic Energy Commission, for plaintiff United States.

Bryan G. Johnson, Albuquerque, N. M., for plaintiffs Phillips Petroleum Co. and Anaconda Co.

Harry L. Bigbee, Santa Fe, N. M., for plaintiffs Homestake-New Mexico Partners and Homestake-Sapin Partners.

Lynn Adams, Oklahoma City, Okl., for plaintiffs Kermac Nuclear Fuels Corporation and Kerr-McGee Oil Industries, Inc.

Earl E. Hartley, Atty. Gen. of New Mexico, Norman S. Thayer, Asst. Atty. Gen., and F. Harlan Flint, Asst. Atty. Gen., for defendants.

Before BRATTON, Circuit Judge, and ROGERS and PAYNE, District Judges.

BRATTON, Circuit Judge.

These cases present for determination the question of the validity of privilege taxes imposed by the State of New Mexico upon private companies, measured by receipts from the Atomic Energy Commission, hereinafter referred to as the Commission, in payment for uranium concentrate.

The United States is one of the plaintiffs in all of these six cases. Phillips Petroleum is a co-plaintiff in one; The Anaconda Company in one; Homestake-New Mexico Partners in one; Homestake-Sapin Partners in one; Kermac Nuclear Fuels Corporation in one; and Kerr-McGee Industries in one. The Bureau of Revenue of New Mexico, the Commissioner of Revenue, and the Director, School Tax Division, of the Bureau

are defendants in all of them. For convenience, reference will be made to the several co-plaintiffs joining the United States as the Companies. The purposes of the actions are to obtain an adjudication that the provisions of the Emergency School Tax Act of New Mexico, as amended, N.M.S.A.1953, §§ 72–16–1 to 72–16–47, hereinafter referred to as the act, be construed as not to apply to sales of uranium made to the Commission; that if the provisions of the act do apply to such sales, it be adjudicated as unconstitutional and void for the reason that it discriminates against the United States; to recover judgment for sums paid for sales of uranium previously made to the Commission; and to restrain further exactions under the act. The first action was dismissed. The judgment was reversed and the cause was remanded for further proceedings. United States et al. v. Bureau of Revenue et al., 10 Cir., 291 F.2d 677. The cases were consolidated for hearing. The answer in each case was amended. Each amended answer contains the affirmative defense that the act creates the right of action for the recovery of taxes paid under protest; that it prohibits the bringing of such suit more than four months after such payment; that it provides that failure to bring the suit within that period shall constitute a waiver of the protest on all claims against the State on account of the illegality of the tax; that the suit was filed more than four months after payment of some of the taxes; and that the rights of plaintiffs, if any existed to recover the taxes paid under protest more than four months preceding the filing of the suit have become barred. The cases were submitted to this specially constituted court composed of three members in accordance with 28 U.S.C.A. § 2281, for final hearing upon the admissions contained in the pleadings and stipulated facts.

The Companies were separately engaged in the business of processing uranium-bearing ore at their plants in New Mexico for the production of uranium concentrate for sale to the Commission. The Companies each entered into a contract with the Commission for the sale of uranium concentrate which it processed. Each contract required the Company to pay under protest the taxes exacted under the act; provided that the price of the uranium concentrate should reflect the burden of the taxes; and provided that the portion of the price attributable to the taxes should be refunded to the United States by the Company if it was successful in obtaining refunds, rebates, or credits of the taxes. Each contract required the Company to institute suit if necessary at the direction of the United States to obtain the refund of protested tax payments. Taxes were assessed under the act. In determining the amount of such taxes, the defendants included in the taxable gross receipts of the business of the Company the proceeds received from the sales of their products to the Commission. The Companies paid under protest taxes exacted under the act attributable to revenue derived from sales to the Commission. The taxes thus paid were in the aggregate amount of $1,063,571.56, most of which was paid in 1957, 1958, and 1959. Only $87,667.59 was paid after February 29, 1960. The actions were instituted on June 29, 1960.

 The major ground urged by the United States for recovery is that during the period involved in these actions the act was unconstitutional in its application to purchases of uranium concentrate which the Commission made from the Companies for the reason that by its terms the act expressly exempted from its provisions sales of tangible personal property, other than metaliferous mineral ores, whether refined or unrefined, made to the State or any of its political subdivisions but failed to grant a like exemption to sales made to the United States, or its agencies. The act was originally enacted in 1935. Chapter 73, article 1, Laws of 1935. By section 2 of the act, sales to the State or its political subdivisions and those made to the United States or its agencies or departments were expressly exempted from

the tax. By chapter 187, Laws of 1957, the exemption in favor of the State and its political subdivision was retained, but that in favor of the United States and its agencies and departments was dropped. And by chapter 195, Laws of 1961, the exemption in favor of the United States and its agencies and departments was again enacted into law in language identical in effect to that relating to the State and its subdivisions. It is the well settled rule that a state cannot constitutionally levy a tax directly against the Government of the United States or its property without the consent of Congress. It is equally well settled that a state in the exercise of its power of taxation may not constitutionally levy a tax which is discriminatory against the United States or those with whom it deals. United States v. City of Detroit, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424; City of Detroit v. Murray Corp., 355 U.S. 489, 78 S.Ct. 458, 2 L.Ed.2d 1441; Phillips Chemical Co. v. Dumas Independent School District, 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384; Moses Lake Homes, Inc. v. Grant County, 365 U.S. 744, 81 S.Ct. 870, 6 L.Ed.2d 66. And a tax levied under state law may be invalid even though it does not fall directly on the United States if it operates in a manner which discriminates against the United States or those with whom it deals. United States v. City of Detroit, supra. But the immunity of the United States from a tax having its source in state law on the ground of discrimination does not shield private parties with whom the United States does business merely because part or all of the financial burden incident to the tax eventually falls upon the United States rather than the persons with whom it does business. Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3; United States v. City of Detroit, supra.

The tax imposed under the act is a privilege tax, measured by the gross receipts of the one engaged in the business. It is imposed for the privilege of engaging in business in the state. Bradbury & Stamm Construction Co. v. Bureau of Revenue, 70 N.M. 226, 372 P.2d 808. The one conducting the business is personally liable for the tax. One purchasing personal property from the one conducting the business is not liable therefor. The Companies were the ones engaged in business in the state. The Commission was not. The Companies were personally liable for the tax. The Commission was not. The tax was assessed against the Companies, not the Commission. And the Companies paid the tax, not the Commission. Until the Commission reimbursed the Companies for the amount of the taxes which had been previously paid, it sustained no financial impact arising out of the exaction and payment of the tax and therefore had no right to urge that the exaction of the tax was illegal because of discrimination.

Upon reimbursing the Companies for the amounts previously paid as taxes under the act, the United States became subrogated to the rights of the Companies to refund for such sums. Ordinarily, the rights of a subrogee do not rise above their source in the hands of the subrogor. Beecher v. Leavenworth State Bank, 9 Cir., 192 F.2d 10, certiorari denied, 343 U.S. 953, 72 S.Ct. 1048, 96 L.Ed. 1354. As subrogee, the United States stepped into the shoes of the Companies in respect to the right of refund. It took nothing by subrogation except the right which the Companies had. United States v. United Services Automobile Association, 8 Cir., 238 F.2d 364. At the time the Commission reimbursed the Companies and acquired by subrogation their rights to a refund, the Companies did not have the right to challenge the tax and assert a right of refund on account of discrimination against the United States. Only the United States could do that. And the United States did not acquire such right by subrogation.

Moreover, for an additional reason plaintiffs are not entitled to recover for the taxes paid prior to February 29, 1960. Section 2 of the act, N.M.S.A.1953, § 72–16–28, authorizes a

suit against the bureau of revenue for the recovery of any tax paid under protest. But the section also expressly provides that no such action shall be instituted more than four months after such payment under protest. And it further provides that failure to bring suit within such period shall constitute a waiver of the protest and of all claims against the state on account of any illegality in the tax so paid. All of the taxes involved here except $87,667.59, were paid more than four months prior to the institution of these actions. The statute creates the substantive right to sue the state for a refund and it fixes the time within which suit for the enforcement of the right must be instituted. It is a statute of creation; and linked immediately with the creation of the right is an express provision fixing the time within which an action for the enforcement of the right shall be instituted. The enactment of a statute of that kind does not constitute an impermissible exercise of legislative power of a state. And it is the general rule that when a statute creates a substantive right and in connection therewith specifies the time within which an action for the enforcement thereof must be instituted, upon failure to institute the action within the specified period, the right and corresponding liability end. Not only the remedy is no longer available, but the right of action itself is extinguished. Matheny v. Porter, 10 Cir., 158 F.2d 478. The right of the Companies to institute and maintain these actions had become extinguished prior to the time these actions were instituted as to all taxes paid more than four months prior to the filing of the suits; and since the Commission acquired by subrogation only the rights of the Companies, the right had also become extinguished as to the United States.

The United States seeks to avoid the impact of the statute in respect to the recovery of taxes paid more than four months prior to the institution of the suits on the ground that illegally exacted taxes may be recovered under federal common law. It is the general rule

that federal law fashions the remedies available to the United States to recover funds disbursed by it in the exercise of its functions or powers. And that general rule has application in actions to recover taxes illegally exacted and paid. Board of County Commissioners v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313; United States v. Independent School District No. 1, 10 Cir., 209 F.2d 578. But that general rule does not have application in these cases for the reason that the United States seeks to recover upon rights which it acquired by subrogation from private parties.

Judgment will be entered in each case for the defendants.