The MARQUARDT CORPORATION and the United States of America, Appellants,

v.

WEBER COUNTY, UTAH, the State of Utah for the Uniform School Fund, Ogden City School District, Weber County School District, Mosquito Abatement District, Weber Basin Water Conservancy District, Warren-West Warren Cemetery Maintenance District, Central Weber Sewer Improvement District, Bona Vista Water Improvement District, and Ogden City, a municipal corporation, all bodies politic, Appellees.

THIOKOL CHEMICAL CORPORATION and the United States of America, Appellants,

v.

BOX ELDER COUNTY, UTAH, the State of Utah for its own fund and for the Uniform and other State School Funds, Board of Education of the Box Elder County School District, Box Elder County Mosquito Abatement District, Brigham City, a municipal corporation, and Tremonton City, a municipal corporation, all bodies politic, Appellees.

Nos. 8309, 8310.

United States Court of Appeals
Tenth Circuit.

May 9, 1966.

William Massar, Washington, D. C. (Richard M. Roberts, Lee A. Jackson, I. Henry Kutz, J. Edward Shillingburg, Washington, D. C., Daniel A. Alsup, Ogden, Utah, Walter G. Mann, Brigham City, Utah, William T. Thurman and Walker E. Anderson, Salt Lake City, Utah, on brief), for United States.

Phil L. Hansen and Ronald N. Boyce, Salt Lake City, Utah, were on brief, for appellees.

Before MURRAH, Chief Judge, SETH, Circuit Judge, and LANGLEY, District Judge.

MURRAH, Chief Judge.

This is a consolidated appeal from orders dismissing two actions brought to recover Utah use taxes assessed and collected pursuant to 59–13–73, 6 Utah Code Annotated, 1953, from appellants Marquardt and Thiokol on their use of tax exempt federal land in the performance

of their contracts with the appellant United States.

The Utah statute imposes "a tax upon the possession or other beneficial use enjoyed by any private individual * * * of any property * * * which for any reason is exempt from taxation, when such property is used in connection with a business conducted for profit, except where the use is by way of a concession in or relative to the use of a public airport, park, fairground, or similar property which is available as a matter of right to the use of the general public, or where the possessor or user is a religious, educational or charitable organization or the proceeds of such use or possession inure to the benefit of such religious, educational or charitable organization and not to the benefit of any other individual association or corporation." The statute also exempts possession or use of public grazing lands under permits issued either by the United States or the State of Utah unless the lease or permit entitles the lessee or permittee to exclusive possession of the premises.

■ Since the actions were dismissed for failure to state a claim upon which relief could be granted, the well pleaded facts must be taken to be true for purposes of these appeals. In No. 8309 Weber County, Utah, assessed the statutory tax in 1960 and 1961 on Marquardt's use of federal land in the performance of contracts with the U. S. Air Force. In No. 8310 Box Elder County, Utah, assessed the same tax in 1960 [1] on appellant Thiokol's use of federal land in the performance of similar contracts. In each case, the use taxes were assessed on the property's reasonable fair cash value and paid under protest to the respective counties for distribution to the counties and each of the appellee taxing units in whose behalf the assessments were made. Although the contracts are not in the record, it appears from the allegations in the petition that the contract obligated the

government to reimburse the contractors for any taxes assessed and paid by the contractors pursuant to 59–13–73 and any recovery of the taxes for which the contractors had been reimbursed would inure to the benefit of the United States.

Appellants claim that the statute is unconstitutionally discriminatory because as written it is aimed at the United States and those with whom it deals, and furthermore, as construed and applied in these cases no tax was levied and collected thereunder on the use of exempt property in the performance of state contracts. The prayer was for a declaration of invalidity and for recovery of the taxes.

While the trial court's order did not specify the grounds of dismissal, the colloquy between court and counsel indicated that it was premised primarily on the view that the United States had simply agreed by contract to pay the contractors a "cost-plus-fixed-fee" (including taxes) and that the assessed taxes were in no sense levied against the United States which merely stood in the taxpayers' shoes as an assignee or subrogee. At this point in the lawsuit, the government seemed to concede that the trial court's reasoning would be valid if the claim of illegality was based solely upon the theory that the legal incidence of the tax fell directly upon the United States. But, counsel was at pains to point out, as indeed it does here on appeal, that the thrust of the attack is that the assessed taxes were discriminatorily assessed against the contractors because they were dealing with the United States; that the statute itself is aimed at the United States. In the view the trial court took of the case, it had no occasion to consider the pleaded defenses of res judicata, statute of limitations or state immunity under the Eleventh Amendment.

Utah does not seem to challenge the standing of the United States to bring the suit under its contractual obligation to reimburse the corporations and to re-

1. A 1961 assessment, not involved here, against Thiokol was sustained by the Utah Supreme Court. See Thiokol Corporation v. Peterson, 15 Utah 2d 355, 393 P.2d 391.

cover the tax if illegally exacted. It simply says that its standing is no different from the corporations who paid the tax pursuant to the state exactions for the use of federal property for private gain.

In a case not unlike these we held that upon reimbursement to the taxpayer for the exacted tax pursuant to its contract to do so, the United States became the real party in interest to assert its right to be relieved from the unconstitutionally discriminatory tax and to assert its immunity from taxation by the state; that the right of immunity from the tax could be asserted by the United States or one standing in its shoes; and that "[i]f the taxpayer has any right to assert the government's immunity, it is a derivative one." United States v. Bureau of Revenue, State of New Mexico, 10 Cir., 291 F.2d 677, and cases cited. The case was accordingly remanded to the trial court with directions to entertain the suit and adjudicate the asserted invalidity of the New Mexico state tax. On remand, however, a three-judge court convened for the purpose of adjudicating the constitutionality of the state statute held that upon reimbursement of the tax the United States became the subrogee of the taxpayer contractor; that the right of the government to maintain the suit as subrogee was derivative of the taxpayers' right; and it, therefore, could not assert its right of immunity. See United States v. Bureau of Revenue, State of New Mexico, D.C., 217 F.Supp. 849. No appeal was taken from this judgment.

■ We adhere to the views expressed on appeal to this court and hold that upon payment of the tax pursuant to its contractual obligation, the government became the real party in interest with the right to assert the invalidity of the tax on the grounds of unconstitutional discrimination against the government and those with whom it deals. See United States v. Allegheny County, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209; Phillips Chemical Co. v. Dumas School Dist., 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384; Moses Lake Homes v. Grant County, 365 U.S. 744, 81 S.Ct. 870, 6 L.Ed.2d 66; United States v. City of Detroit, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424. The suit being one by the United States to vindicate a constitutionally vested right of sovereign immunity, the right may be asserted unimpeded and unobstructed by state notions of available remedies or statute of limitations. See United States v. Independent School Dist. No. 1, 10 Cir., 209 F.2d 578 and cases cited. Nor does the Eleventh Amendment bar the suit.

■ The historical immunity of the United States from state taxation as first declared in McCulloch v. State of Maryland, 4 Wheat. 316, 4 L.Ed. 579, has been the subject of extensive litigation and much contrariety. See the so-called Michigan Cases, United States v. City of Detroit, 355 U.S. 466, et seq., 78 S.Ct. 474, 2 L.Ed.2d 424. The problem of the power of the state to tax the use of exempt property by a contractor in the performance of a federal contract was most recently treated in United States v. Boyd, 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed. 2d 713. Mr. Justice White, speaking for a unanimous court, epitomized the case law in these terse words: "The Constitution immunizes the United States and its property from taxation by the States, * * * but it does not forbid a tax whose legal incidence is upon a contractor doing business with the United States, even though the economic burden of the tax, by contract or otherwise, is ultimately borne by the United States." Id. 44, 84 S.Ct. 1521.

■ Making application of these principles, the court in Boyd rejected the contractors' contention that as "cost-plus-fixed-fee" contractors of the federal government they were in legal effect agents or instrumentalities of the United States and that their activities on behalf of the government should be considered as a governmental function. The court did not think they were "so assimilated by the Government as to become one of its constituent parts." Id. 47, 84 S.Ct. 1523. But, nothing in this concept of state taxing power authorizes a state to discrim-

inate between federal and state contractors. "It still remains true, as it has from the beginning, that a tax may be invalid even though it does not fall directly on the United States if it operates to discriminate against the Government or those with whom it deals." United States v. City of Detroit, supra; Phillips Chemical Co. v. Dumas School Dist., supra; Moses Lake Homes v. Grant County, supra.

■ Where, as here, problems of intergovernmental immunity are involved, more is required than mere compliance with Fourteenth Amendment equal protection of the laws. The Supremacy Doctrine controls and "where taxation of the private use of the Government's property is concerned, the Government's interests must be weighed in the balance. Accordingly, it does not seem too much to require that the State treat those who deal with the Government as well as it treats those with whom it deals itself." Phillips Chemical Co. v. Dumas School Dist., supra, 361 U.S. 385, 80 S.Ct. 480. It is by these standards that we judge the constitutionality of the taxes under the Utah Code.

■■ Since the tax is laid on the private use for profit of "any property * * * which for any reason is exempt from taxation", the statute cannot be said to be unconstitutionally discriminatory on its face unless the exceptions make it so. Certainly, the exception relating to use by or for the exclusive benefit of religious, educational or charitable organizations is not discriminatory in any respect. The same is true of the beneficial use of public lands, state or federal. It has been suggested that the exception granted concessions in airports, parks and fairgrounds may be discriminatory since the state or its political subdivisions are most likely to own the property used by these concessions. See Use Tax on Exempt Property, Vol. 9, No. 2, Utah Law Review, 415, 427. But, we cannot discern any inherent discrimination in the exemption of concessions in public places although such public places may largely belong to the state. We do

know, of course, that concessions are maintained and operated for profit in government owned facilities, and we do not think the constitutional issue turns on the quantitative equation.

This brings us to the question whether the statute is being discriminatorily applied in the sense that the state is treating its own contractors differently from those dealing with the federal government, and more particularly whether the factual issue can be resolved on this state of the record.

Giving full credence to the pleaded facts of discrimination, i. e. that the state did not impose the same tax against the activities of state contractors, we are left to decide whether such discrimination constitutionally entitles the government and its contractors to annulment of the tax assessed against them. In that regard it is important to note that 59–13–73 was enacted in 1959, and the taxes involved here were levied in 1960 and 1961. Appellant Thiokol attacked its 1961 assessment in the state courts of Utah and the United States intervened. See Thiokol v. Peterson, 15 Utah 2d 355, 393 P.2d 391. The proof there, as alleged here, was that for the tax year in question the state failed to levy the same tax against contractors using exempt property in performance of state contracts. The Utah Court construed 59–13–73 as uniformly applicable to all users of tax exempt property for profit and held the statute impliedly repealed a prior statute expressly exempting state owned property. The court excused the failure of the state to impose the tax on the use of tax exempt property by state contractors on the grounds that such failure "stemmed from lack of knowledge or misunderstanding of the effect of the new law" and that there was no deliberate, intentional or systematic discrimination. The court was of the view that the remedy for the discrimination in circumstances like these was not the recovery of the tax, but the uniform enforcement of the law.

■ While the state determination of the issue of unconstitutional dis-

crimination is not res judicata, nor does it operate as an estoppel by judgment, its interpretation of its own statute is controlling, and its reasoning on the constitutional issue is, we think, highly persuasive. We agree with the Utah Court that an inadvertent or mistaken failure to tax the activities of state contractors does not justify a declaration of unconstitutional discrimination so as to justify recovery of the tax. We hold with the Utah Court that the discrimination must be deliberate and systematic. It may be on remand of the case appellants will be able to prove that the discrimination was systematic and deliberate, and the case is remanded to the trial court to afford appellants an opportunity to present such proof.