594

The CURTIS PUBLISHING COMPANY
v.
CHURCH, RICKARDS & CO., INC.

The CURTIS PUBLISHING COMPANY
v.
WHITLOCK & COMPANY, INC.
Civ. A. Nos. 71–1721, 71–1939.

United States District Court,
E. D. Pennsylvania.
Feb. 27, 1973.

Thomas M. Kittredge, Philadelphia, Pa., for plaintiff.

Michael H. Egnal, Philadelphia, Pa., for defendants.

## OPINION

BECHTLE, District Judge.

The above-captioned cases were commenced by the plaintiff, Curtis Publishing Company, against the defendant Church, Rickards & Co., Inc. ("Church"), in July of 1971 and against defendant Whitlock & Company, Inc. ("Whitlock"), in August of 1971. Thereafter, by Order of this Court, the cases were consolidated for all purposes.

The actions are based on individual agreements between plaintiff, a publisher of magazines, and the defendants, who engage in the business of promoting and obtaining magazine subscriptions. The thrust of the agreements was that the defendants would obtain subscriptions to plaintiff's magazines and would remit a certain portion of the proceeds collected to plaintiff. Plaintiff claims, through this action, that defendants Church and Whitlock owe $87,475.68 and $71,081.70, respectively, under this agreement and that its demand for these payments has been refused.

Presently before the Court is plaintiff's motion for partial summary judgment against Church in the amount of $84,703.91 and against Whitlock in the amount of $69,924.70.

In 1968, plaintiff published five magazines: "Saturday Evening Post," "Ladies' Home Journal," "American Home," "Holiday," and "Jack and Jill." Pursuant to their agreements [1] with plaintiff, the defendants collected and remit-

---

1. The agreement between plaintiff and Church was entered into on June 19, 1940; the agreement between plaintiff and Whitlock was entered into on December 19, 1966.

ted for each magazine sold a portion of the subscription price to plaintiff. The amounts due and payable to plaintiff by the defendants were completely paid up until January 1, 1969.

On January 10, 1969, Curtis announced that it was ceasing the publication of "Saturday Evening Post." No remittances have been made by the defendants on collections made after January 1, 1969.

In its complaint, plaintiff seeks $87,475.68 from Church and $71,081.70 from Whitlock. In their respective answers, defendants deny liability under the agreements and incorporate counterclaims based on alleged breaches of the agreements by plaintiff. Defendants claim damages in excess of the amounts sought to be recovered by the plaintiff. Defendants assert that plaintiff should not be allowed to recover sums during a period in which it was in breach of its agreements.

In response to specific interrogatories of the plaintiff, defendants acknowledge that the amounts due and payable under the agreements to plaintiff, for the period commencing February 1, 1969, to and including February of 1972, are $84,703.91 from Church and $69,924.70 from Whitlock.

Plaintiff claims that, inasmuch as the defendants admit that $84,703.91 and $69,924.70 are due it under the agreements, there is no genuine issue to any material fact in regard to its claim to the extent of those amounts; therefore,

a partial summary judgment should be granted in its favor under Fed.R.Civ.P. 56(a) [2] and that the same should be entered at this time under Fed.R.Civ.P. 54(b), since there is no just reason for delay.

The summary judgment procedure prescribed in Rule 56 is designed for the prompt disposition of an action when there is no genuine issue regarding any material facts, thus avoiding an unnecessary trial to prove facts which are not in dispute. The rule contemplates an inquiry in advance of trial as to whether there is a genuine issue and may be invoked for the purpose of sham claims and defenses which obstruct a prompt determination of the truth. It cannot be applied as to deprive a litigant of his right to try any genuine issue by jury or otherwise. Parmelee v. Chicago Eye Shield Co., 157 F.2d 582, 585 (8th Cir., 1946).

Rule 54(b) prescribes the standards for when a judgment may be entered in respect to less than all claims or parties in an action involving multiple claims or parties.

The defendants argue that their counterclaims arise out of the same transaction as the plaintiff's claim and that there is a genuine controversy with regard to that transaction; therefore, plaintiff is precluded under Rule 54(b) from obtaining the judgment it seeks. For this proposition, defendants cite the Parmelee v. Chicago Eye Shield Co., *supra*.[3] In that case, plaintiff sued de-

---

2. Fed.R.Civ.P. 56: "(a) *For Claimant.* A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof."

3. Plaintiff also cited the case of Frederick v. The United States, 386 F.2d 481 (5th

Cir., 1967). In that case, the court reversed the lower court's granting of summary judgment, holding there was a lack of sufficient proof by the party seeking the summary judgment as to the certainty of the amounts sought in the summary judgment claim. By reason of defendants' answers to interrogatories in the case at hand, we find no such uncertainty as to the amount here and, accordingly, do not find *Frederick* applicable.

fendant on account of goods sold and delivered. Defendant answered admitting plaintiff had sold and delivered to it the goods at a value slightly less than plaintiff claimed. Defendant denied it was indebted to the plaintiff in any amount and alleged, by reason of six counterclaims, that it was entitled to recover from plaintiff an amount far in excess of plaintiff's demand.

The trial court granted summary judgment on plaintiff's claim, less an amount set out in defendant's first counterclaim, which plaintiff admitted was due the defendant. The court ordered the remaining counterclaims to be tried in a separate trial. They were all based on an alleged breach of a distributorship agreement between plaintiff and defendant, out of which the sale of goods transaction arose.

The appellate court reversed on the ground that there did not exist more than one "claim for relief," as required under Rule 54(b). The court held:

"In the instant case . . . there could not be separate actions on different claims, counts or causes of action in plaintiff's complaint because there was but one claim presented. We are of the view that plaintiff was not entitled to judgment under Rule 54(b) regardless of whether the counter-claims arose out of the transaction or occurrence which is the subject matter of plaintiff's claim." 157 F.2d at 587.[4]

Since *Parmelee*, Rule 54(b) has been amended twice; 1946 and 1961. The language of Rule 54(b), determinative of the *Parmelee* decision, "[W]hen more than one claim for relief is presented in

an action . . . .," has not been altered by the amendments in its substance, but it has been altered by the courts in its interpretation.

■ It is now generally held that wherever more than one claimant requests relief, as by counterclaim, cross-claim, etc., more than one "claim for relief" is presented regardless of the factual similarity of claims, since the claimants could have enforced their claims separately. 3 Barron & Holtzoff, Federal Practice and Procedure § 1193 (Wright, Ed.Supp.1972). Cold Metal Process Co. v. United Engineering and Foundry Co., 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311 (1956); Moses Lake Homes, Inc. v. Grant County, 276 F.2d 836 (9th Cir., 1960), reversed on other grounds, 365 U.S. 744, 81 S.Ct. 870, 6 L.Ed.2d 66 (1961).

■ We also interpret the language of Rule 54(b) in this manner; and since, in the instant case, the defendants could have presented their counterclaims in a separate action for damages on breach of the agreements, we find that more than one claim for relief exists in this action.

■ Defendants also raise the argument that the counterclaims alleged in their answers should, in addition, be construed as defenses to the plaintiff's claim, relying on Fed.R.Civ.P. 8(c). Rule 8(c) provides in part:

" . . . when a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."

---

4. The defendants cite *Parmelee* as holding that, because the claim and counterclaims arose out of the same transaction, plaintiff was not entitled to the relief sought. The court does not read *Parmelee* as standing for that proposition. Moreover, we note that the language of Rule 54(b) relating to "claims and counterclaims arising out of the same transaction" has been completely deleted from Rule 54(b) by amendments to that rule subsequent to *Parmelee*.

598

We find no merit to this contention. Notwithstanding an alleged breach by plaintiff in the cessation of "Saturday Evening Post," defendants continued to collect the subscriptions but failed to remit any portion to the plaintiff. The money they failed to remit is the subject matter of this motion. Even assuming there was a breach by plaintiff, no greater right to the unremitted funds thereby inures to the defendants. Their only remedy is in a suit for damages arising from that breach. This may be raised in a counterclaim, but it does not create a defense for failing to remit moneys they were not entitled to retain under the agreements.

Finally, the defendants raise the question of to whom the money is properly owing. Plaintiff has satisfied the Court, through affidavits, that the entire amount prayed for in this motion for partial summary judgment is properly due it.

■■ The Court finds that there are no genuinely disputed factual issues as to the plaintiff's claim, since the defendants have admitted in their answers to plaintiff's interrogatories that the amount of plaintiff's summary judgment claim is the amount due and owing as unremitted proceeds from subscriptions; therefore, we see no reason why a partial summary judgment under Rule 56 should not be entered. There are, however, genuine unresolved factual issues as to the defendants' counterclaims; but since they are separable from the plaintiff's claim, they will not preclude granting a summary judgment in this instance. See, Schroeter v. Ralph Wilson Plastics, Inc., 49 F.R.D. 323 (S.D.N.Y., 1969).

With its motion for partial summary judgment, plaintiff seeks an order pursuant to Rule 54(b) that there is no just reason for delay in the entry of this partial summary judgment. Rule 54(b) reads as follows:

*"Judgment Upon Multiple Claims or Involving Multiple Parties.* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

■ When a final judgment is entered under Rule 54(b) with an express determination by the Court that there is no just reason for delay and an express direction for an entry of the judgment, Fed.R.Civ.P. 62(h) [5] authorizes the Court to stay enforcement of that judgment until the entering of the subsequent judgment or judgments. 6 Moore's Federal Practice § 56.17[15] (2d Ed., 1971). Thus, under the present Rule 54(b), this Court may enter a final

5. Fed.R.Civ.P. 62: "(h) *Stay of Judgment as to Multiple Claims or Multiple Parties.* When a court has ordered a final judgment under the conditions stated in Rule 54(b), the court may stay enforcement of that judgment until the entering of a subsequent judgment or judgments and may prescribe such conditions as are necessary to secure the benefit thereof to the party in whose favor the judgment is entered."

summary judgment upon an established claim now, although a counterclaim remains to be tried. The losing party will be adequately protected under Rule 62(h). See, Navajo Tribe of Indians v. United States, 364 F.2d 320, 176 Ct.Cl. 502 (1966); Omark Industries, Inc. v. Lubanko Tool Company, Inc., 266 F.2d 540 (2d Cir., 1959). Accordingly, the following Order will be entered:

## ORDER

And now, to wit, this 27th day of February, 1973, it is hereby ORDERED that:

1. A partial summary judgment is *granted* in favor of the plaintiff, Curtis Publishing Company, and against defendant Church, Rickards & Co., Inc., in the amount of $84,703.91;

2. A partial summary judgment is *granted* in favor of the plaintiff and against the defendant, Whitlock and Company, Inc., in the amount of $69,924.70;

3. Interest on the above two amounts is *granted* plaintiff from the respective defendants computed at a rate of six percent (6%) per annum from the date upon which each monthly payment was due, *see* Peyton v. Margiotti, 398 Pa. 86, 156 A.2d 865 (1959); Barium Steel Corp. v. Wiley, 379 Pa. 38, 108 A.2d 336 (1954);

4. There is no just reason for delay in the entry of a judgment in favor of the plaintiff;

5. A final judgment in favor of the plaintiff and against the respective defendants in the amounts set forth herein be entered;

6. The enforcement of these judgments is *stayed* pending entry of final judgments on the defendants' counterclaims pursuant to Fed.R.Civ.P. 62(h).